## Rosenberger *versus* Hallowell *et al.*

A sub-tenant, or assignee of the tenant, who has not been recognised as such by the landlord, cannot claim the benefit of the exemption law, as against a distress for rent; the goods being levied on as those of the original lessee, by whom no claim for the exemption is made. Neither the relation of landlord and tenant, nor that of debtor and creditor, exists between the landlord and such assignee.

ERROR to the District Court of *Philadelphia*.

This was an action of trespass by John D. Rosenberger against Joseph T. Hallowell, William W. Hallowell, Henry Simpson, and Sarah Wistar, for levying on and selling the plaintiff's goods under a distress for rent, in disregard of his claim for the benefit of the exemption law.

On the 1st April 1844, Sarah Wistar, by her attorney, Richard Wistar, leased to Josiah P. White a coal yard and office on Broad street, between Race and Vine streets, in Philadelphia, for the term of five years, at the yearly rent of $600, payable quarterly. The lease contained a condition that White should not, in any manner or way, dispose of the demised premises, to any person or persons whatever, without the consent and approbation of Richard Wistar first had, in writing, for that purpose.

On the 1st January 1848, White, with the written consent of Wistar, assigned the lease to John G. Flegel, subject to all the covenants of one original lease. And on the same day, Wistar extended the lease to Flegel for two years from the 1st April 1849; Flegel covenanting to keep and perform all the clauses, covenants, and conditions of the lease to White.

On the 5th June 1850, the lease to Flegel was again extended for a further term of two years, subject to the same covenants, powers, reservations, &c., contained in the original lease to White. And on the 1st July 1850, Flegel, with the consent in writing of Wistar, assigned the lease to James Crawford, subject to the same covenants, &c.

On the 11th March, 1856, Sarah and Richard Wistar extended the lease to Crawford, for a further term of one year from the 1st April 1856, at the yearly rent of $1000, subject to the same covenants, &c., as contained in the original lease to White. And on the 24th February 1857, Sarah Wistar and Richard Wistar, by an instrument under seal, extended the lease to James Crawford & Son, for the additional period of one year from the 1st April 1857, subject to the same conditions, &c.

James Crawford & Son, without the knowledge or consent of Wistar, underlet about one-half of the lot to Franklin Byerly.

[Rosenberger *v.* Hallowell *et al.*]

And on the 12th January 1858, without the knowledge or consent of Wistar, they assigned the lease to Isaac D. Rosenberger; who, on the same day, executed a declaration of trust, in favour of John D. Rosenberger, the plaintiff.

John D. Rosenberger renewed the letting to Byerly; and from that time until the 1st April 1858, Rosenberger and Byerly occupied the lot, each using separately about one-half of it, and each doing business on his own account.

On the 1st April 1858, Henry Simpson, the agent of the landlords, called at the office on the premises, to collect the quarter's rent then falling due. And in default of payment, a warrant of distress was issued to Joseph T. Hallowell, a constable, authorizing him to distrain for the same, on the goods of James Crawford & Son, on the demised premises.

By virtue of this warrant, Hallowell, on the 2d April, levied on the coal and other goods upon the premises, and left a notice of the distress directed to James Crawford & Son. On the 8th April, the goods levied on were duly appraised at $383.50; and they were advertised for sale on the 14th.

On the 12th April, the plaintiff gave notice to Hallowell that he claimed the benefit of the $300 exemption law; and immediately before the sale, he read a similar notice to the constable. The sale took place, without regard to the plaintiff's claim for the benefit of the exemption law. The defendants, Simpson and William W. Hallowell, were present at the sale.

Under the instructions of the court, the jury found a verdict for the plaintiff for $310.10, subject to the opinion of the court upon the following points reserved:—

1. Whether the plaintiff was at all entitled to recover, under the evidence?    2. Whether there was any evidence that plaintiff was recognised as tenant by the lessor, and if not, whether he could recover in the action?    3. Whether there was any evidence of a demand of exemption made in due time by plaintiff?    4. Whether, inasmuch as the entry to distrain was made under an authority in fact by the express clause of distress in the lease, the action of trespass can be maintained?

The defendants, thereupon, moved for a new trial, and for judgment in their favour on the points reserved; and the court in *banc* dismissed the rule for a new trial, and entered judgment for the defendants on the reserved points, the following opinion being delivered by SHARSWOOD, P. J. :—

" Without going through the many interesting questions which are presented upon the rule, we confine ourselves to the expression of our opinion upon two points, either of which must result in a decision adverse to the plaintiff.

" It was an action of trespass against a landlord, his bailiffs and assistants, for distraining upon and selling plaintiff's goods,

[Rosenberger v. Hallowell *et al.*]

notwithstanding his claim under the exemption law. The plaintiff was a sub-tenant, or assignee of the original tenant. He had never been recognised as a tenant by the landlord. The demand, warrant to distrain, &c., were all in the name of the original tenant. We are of the opinion that a mere stranger whose goods being on the premises are distrained, cannot claim the exemption. The original tenant may make such claim to protect the goods of his sub-tenant, or the stranger, but neither of the latter parties is a debtor within the meaning of the law, nor are they indeed within its spirit. The stranger, or sub-tenant, may be a very wealthy man, but no other goods or property can be reached or levied on, at least by the parties in question. The demand made and allowed to them must show against the original tenant, the debtor, and preclude him from another demand for the exemption of other property, which may be distrained or levied for the same debt.

"But in addition to this objection to plaintiff's recovery, we are of opinion that there was no evidence of a demand of the exemption *made in time*. Allowing the plaintiff all the claims upon the testimony adduced before the jury, the earliest demand was upon the day the bills for the sale were posted. The notice of distress was on the 2d April 1858; on the 8th, the landlord had the goods appraised according to the Act of Assembly; and on the same day, the sale was advertised for the 14th April. Here was ample time and notice; and supposing the plaintiff to be entitled to claim, he should have made his demand promptly, at least before the landlord had taken any step involving further cost. Rule dismissed, and judgment for defendants."

The plaintiff thereupon sued out this writ, and here assigned for error, that the court below erred in entering judgment for the defendants or the points reserved.

*Earle*, for the plaintiff in error.—The Act of 1849 is humane, and should receive a liberal construction: Hanley v. O'Donald, 6 *Casey* 261; Wilson v. McElroy, 8 *Id.* 82. The plaintiff was a debtor in virtue of the assignment of the lease from the Crawfords; and the landlords could only justify the distress by pleading the possession of the premises by the plaintiff as their tenant: Clifford v. Beems, 3 *Watts* 246; Beltzhoover v. Waltman, 1 *W. & S.* 416; Maule v. Weaver, 7 *Barr* 329. The plaintiff was also a debtor to the landlords by reason of his possession and enjoyment of the premises: 6 *Harris* 9; 3 *W. & S.* 531.

The demand for the exemption was made in time: Hammer v. Freese, 7 *Harris* 255; Wilson v. McElroy, 8 *Casey* 82.

*T. S. Smith* and *L. A. Scott*, for the defendants in error, cited Ghegan v. Young, 11 *Harris* 20; *Comyn on Landlord and Tenant*,

[Rosenberger *v.* Hallowell *et al.*]

book 2, ch. 3, p. 245; *Wilkinson on Replevin* 58; *Morris on Replevin* 102; Wadham *v.* Marlowe, 4 *Doug.* 54; Walker's Case, 3 *Co.* 22; Blume *v.* McClurken, 10 *Watts* 380; Pott *v.* Lesher, 1 *Yeates* 576; Henwood *v.* Cheeseman, 3 *S. & R.* 500; Mackey *v.* Robinson, 2 *Jones* 170; 1 *Chit. Pl.* 8; Nash *v.* Tatlock, 2 *H. Bl.* 320; Bull *v.* Sibbs, 8 *T. R.* 327; McGunnagle *v.* Thornton, 10 *S. & R.* 253; Auriol *v.* Mills, 8 *T. R.* 98.

The opinion of the court was delivered by

WOODWARD, J.—The Crawfords held the demised premises, expressly subject to the condition in the original lease, that they would not assign their term, or sub-let the premises, without Wistar's consent, and their assignment to Rosenberger was in violation of that condition. No subsequent assent of the landlord to the assignment, and no recognition by him of the sub-tenant, were proved. Neither the relation of landlord and tenant, nor of debtor and creditor, was established, therefore, between Wistar and Rosenberger. But if not a debtor for the rent, he was not entitled to the exemption of the statute. He was not, as the judge said, within either the letter or the spirit of the statute. That his goods were seized, was due to the accident of their being found on the demised premises. A stranger's goods would have shared the same fate in like circumstances. But this is by virtue of the prerogative which the law vests in the landlord, and not because the stranger, or the unrecognised sub-tenant, is the *debtor* of the landlord. The account was made out against the Crawfords, and the warrant issued against them. They were debtors within the meaning of the act, but they claimed no exemption, and those who came in under them without the landlord's consent had no right to claim it.

The judgment is affirmed.