# Whiting & Co. *versus* Lake.

1. W. went into possession of certain premises under H., and held over after the termination of the lease of H. *Held*, that under the provisions of the Act of March 21st 1772, the goods of W. were liable to distress for rent due by H., before as well as after the termination of the lease, unless such possession was continued under the authority of the owner of the property.

2. It is not competent to prove an agent's authority by the declarations of the agent. Nor are his acts done without the knowledge or authority of his principal, any evidence of his agency.

October 17th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1879, No. 4.

Replevin by N. Whiting & Co. against Bennett Lake, bailiff of Mrs. Simpson, wife of Bishop Simpson, for certain goods levied on by Lake, for rent of a property on Penn street, Pittsburgh.

The building is connected with another four-storied building, the upper rooms being reached by a staircase common to both houses. The two lower rooms are occupied as stores. One of the buildings belongs to Mrs. Morrison, a sister of Mrs. Simpson, who had employed Dr. Pennington, as agent. Mrs. Simpson also authorized Dr. Pennington to rent the rooms on the second and fourth floors

[Whiting *v.* Lake.]

of her building, but retained control of the store-room herself. By a written lease, in which her husband joined, she let the store-room to Henkle & Brother, for a term of one year, from April 1st 1873, with the privilege of three years, and they occupied the premises until the spring of 1875. Some time after the first of January, 1875, Henkle & Bro. discontinued business, and N. Whiting & Co. took possession of the premises under them.

At the time plaintiffs took possession of the premises, there was posted in the window of the store-room, "To Let. Inquire at 177 Penn avenue, or of D. F. Pennington, room 7, up stairs." Plaintiffs, desiring to continue auction sales on the premises during the first and second weeks in April, called, on the 30th of March as directed in the "To Let" notice, on James Vernor, a brother of Mrs. Simpson, at No. 177 Penn avenue, one of the parties to whom they were directed by the said notice. He declined to rent the store in the way proposed, but told plaintiffs to see Dr. Pennington, who might make the arrangement. They saw Dr. Pennington, and, after agreeing to vacate in the event a yearly tenant was procured, it was arranged he should rent to plaintiffs, for one or two weeks of April, at $20 per week. Dr. Pennington occupied a room up stairs, and had on the door of the hallway a tin sign, marked "D. F. Pennington, Agent for this building." On the evening of the 1st of April, the plaintiffs' goods were distrained for rent, due by Henkle & Brother, April 1st 1876, amounting to $500. Plaintiffs thereupon issued this writ of replevin.

The following assignments of error will show the questions raised in the court below, and the action of the court, Bailey, J., thereon:

The court erred in affirming plaintiffs' first point, with the qualification: that the relation of landlord and tenant must exist to entitle the former to a distress. Affirmed by adding "or must have existed."

2d. In refusing plaintiffs' second point. That plaintiffs' goods were not liable for payment of rent due and in arrears by the prior tenant, and the verdict should be for the plaintiffs.

3d. In refusing plaintiffs' third point. That if the lease from Simpson and wife to Henkle & Brother had ended and determined prior to the distress on plaintiffs' goods for arrearages due by Henkle & Brother, and the goods distrained were plaintiffs' property, then the distress was illegal, and plaintiffs are entitled to a verdict in this case.

4th. In refusing plaintiffs' fourth point. That if the jury believe that the landlord authorized the posting of the notice "To Let. Inquire of No. 177 Penn avenue, or of D. F. Pennington, room No. 7, 198 Penn street, up stairs," or knew that such notice was posted in the window of the premises, and permitted the same to remain; and plaintiffs, on the strength of such notice, dealt in

[Whiting *v*. Lake.]

good faith with the parties to whom by said notice they were referred, then the landlord is estopped, the distress is illegal, and plaintiffs are entitled to a verdict.

5th. In refusing plaintiffs' fifth point. That if the parties referred to in said "To Let" notice, acted without authority, or beyond the scope of their authority, then the relation of landlord and tenant did⁻not exist, and the distress was illegal, and plaintiffs are entitled to a verdict.

6th. In refusing plaintiffs' sixth point. That if the court should regard the possession of the plaintiffs to be a holding over by Henkle & Brother under their expired lease, then the plaintiffs' goods would not be liable for distress for arrears of rent for the previous term.

7th. In refusing plaintiffs' seventh point. That under the law and evidence, plaintiffs are entitled to a verdict.

8th. In submitting the case to the jury, and after the jury had retired and returned to court with a verdict for plaintiffs, in refusing to receive the verdict, and instructing the jury to find a verdict for the defendant.

Verdict for defendant, when plaintiffs took this writ and alleged that the court erred as set forth above.

*Samuel C. Schoyer*, for plaintiffs in error.—The first point of plaintiffs' should have been affirmed without qualification.

So also the second, third, fifth and sixth points should have been affirmed. The goods distrained on were plaintiffs' property exclusively, in which the prior tenants, Henkle & Brother, had no interest at the time of the distress or at any time. The lease to Henkle & Brother had determined, and the landlord knew they had quit possession.

Even had the goods belonged to the prior tenant, and been sold to plaintiffs fairly, they could not have been distrained for rent due by the prior tenant. The distress should have been during the possession of the prior tenant: Clifford *v*. Beems, 3 Watts 247; Beltzhoover *v*. Waltman, 1 W. & S. 417.

*Slagle & Wiley*, for defendant in error.—The goods of a stranger found on the demised premises are liable to distress: Kessler *v*. McConachy, 1 Rawle 435; Price *v*. McCallister, 3 Grant 248. If so, they must, under the terms of the Act of 1772, be liable after the determination of the lease "in the same manner" as if such lease had not been ended. In Moss's Appeal, 11 Casey 162, the court held that such distress would be valid so long as goods remain upon the premises liable to distress, and in that case sustained the claim of the landlord against the property of an assignee of the term over three years after the determination of the tenancy. See also Rosenoerger *v*. Hallowell, 11 Casey 369. The

words, meaning and purpose of the Act of March 21st 1772, sect. 14, Purd. Dig. 876, pl. 1, are sustained by holding that so long as property remains on the premises liable to distress, if the lease had not been ended, it continues liable, even though the lease be ended; any other rule would be inconsistent with the decisions in Moss's Appeal and Rosenberger *v.* Hallowell. It cannot be seriously contended that a sub-tenant or assignee of the lease holding over, does not place himself in the same position as the person under whom he entered into possession.

Mr. Justice STERRETT delivered the opinion of the court, October 27th 1879.

The plaintiffs' goods on the premises were distrained for three months' rent, due April 1st 1875, under the lease from Bishop Simpson and wife to Henkle & Bro. No question was raised as to the amount of rent in arrear or the regularity of the proceedings, nor was it claimed that the goods were such as are exempt from distress in the interest of trade, &c.; but the contention, on the part of the plaintiffs, was that they were not liable to distress: 1st, Because the lease to Henkle & Brother, under which the rent accrued, having expired, and the relation of landlord and tenant as between them and the lessor having ceased, the latter had no right to distrain the goods of a stranger on the premises; and 2d, Because the plaintiffs were in possession under a lease from the owner of the premises, and therefore their goods were not liable to distress for rent due by the former tenants, Henkle & Brother. These propositions embrace everything that was urged in answer to the defendant's avowry.

The first proposition is based on a misapprehension of the Landlord and Tenant Law. The Act of March 21st 1772 provides, that "it shall be lawful for any person having rent in arrear or due upon any lease for life or lives, or for one or more years or at will, ended or determined, to distrain for such arrears, after the determination of their respective leases, in the same manner as they might have done, if such lease or leases had not been ended or determined; provided, that such distress shall be made during the continuance of such lessor's title or interest." The Statute of Anne, from which ours is copied, limited the landlord's right of distress to six months after the determination of the lease; but our act authorizes it whenever there is rent in arrear and the landlord retains the title.

If the plaintiffs went into possession under Henkle & Brother, and are holding over after the termination of their lease, or if they were in without authority from any one, it cannot be doubted that their goods, on the premises, were liable to distress for rent due by Henkle & Brother. As a general rule, to which there are some exceptions, in the interest of trade, &c., the goods of a stranger, on

[Whiting v. Lake.]

the demised premises, are liable to distress for rent: Kessler *v.*
McConachy, 1 Rawle 435; Price *v.* McCallister, 3 Grant 248;
Beltzhoover *v.* Waltman, 1 W. & S. 416, and Karns *v.* McKinney,
24 P. F. Smith, 387. This being so, they must, under the very
terms of the act, be liable after, as well as before, the determina-
tion of the lease, in the same manner as if the lease were still in
force: Moss's Appeal, 11 Casey 162; Rosenberger *v.* Hallowell,
Id. 369. Any other construction would be a virtual repeal of the
Act of 1772. The learned judge was therefore right in qualifying,
as he did, the plaintiffs' first point, and in refusing their second,
third and sixth points. This disposes of the assignments desig-
nated by the same numbers.

If the allegations of fact embodied in the second proposition
were true, they would be a complete answer to the avowry. If, at
the time of the distress, the plaintiffs were in possession under a
lease to them from the owner of the property, the relation of land-
lord and tenant thus existing between them, would forbid that their
goods should be seized to satisfy rent due by the former tenants:
Clifford *v.* Beems, 3 Watts 246; Beltzhoover *v.* Waltman, *supra.*
But, was there any proof of such relation? The court below
thought there was not, and in the end gave binding instructions to
the jury to find for the defendant, and ascertain the amount of rent
due. If there was any testimony from which the jury might reason-
ably have found that the plaintiffs had leased the premises from the
owner or an authorized agent, it should have been submitted to them.
It was not pretended that they leased directly from Mrs. Simpson,
the owner, or that they ever had any personal communication with
either her or her husband on the subject. They claimed to have
leased from Doctor Pennington, who, as they alleged, was the agent
of Mrs. Simpson, and offered testimony for the purpose of showing
that they remained in possession after the termination of Henkle &
Brother's lease, under an agreement with him to pay a weekly rent
for the short time they wished to occupy the premises; but they
utterly failed to show that Pennington was ever authorized to lease
the premises, or that the owner had done or omitted to do anything
that would have the effect of estopping her from denying his agency.
It was not competent to prove Pennington's authority by his de-
clarations. Nor were his acts, done without her knowledge or
authority, any evidence of his agency. It was shown that he had
authority to lease rooms on the second and fourth stories of the
building, and collect the rents thereof, for which he held a power
of attorney, defining and limiting his authority to that particular
matter. If the plaintiffs had examined this they would have seen
that it did not authorize him to lease the premises in question.
The only semblance of authority that he had was testified to by
Bishop Simpson. In view of Henkle & Brother vacating the
premises, Mrs. Simpson had proposed to give Pennington $100 if

10 NORRIS—23

[Whiting *v.* Lake.]

he would find her an approved tenant for one year at $2000; but the same witness testified that "neither he nor any other person was authorized to lease the property in any shape or form, but simply to give her information, in case he could find a tenant;" and he further said that the reason of this was that Mrs. Simpson was unwilling that the store-room should be occupied by any one that she did not first approve. The testimony on this subject is most pointed and emphatic that the proposition to find a tenant for a year "did not embrace the right in anybody to make a lease, but simply to find a tenant and report." Outside of Pennington's declarations, which were not evidence, the testimony entirely fails to show that he had any authority to lease the premises in question. The state of the evidence was such that it would have been the duty of the court below to set aside a verdict in favor of the plaintiffs. This being the case, there was no error in giving binding instructions to the jury to find for the defendant; but it would have been more orderly to have so instructed them in the first instance. The assignments of error are not sustained.

Judgment affirmed.