HENRY HESSEL v. M. T. JOHNSON.

ERROR TO THE COURT OF COMMON PLEAS NO. 4 OF PHILA-
DELPHIA COUNTY.

Argued April 10, 1889—Decided November 12, 1889.
[To be reported.]

1. A tenant for a term certain, who has sub-let the premises, or a portion thereof, cannot by a surrender to his lessor prejudice the rights of the sub-tenant, who will be held to have attorned to the original landlord on the terms of the sub-lease to him.
2. If after such sub-letting and surrender, the sub-tenant has remained in possession of the premises sub-let to him, his goods thereon are not liable to distraint for rent due from a new tenant, to whom the landlord has demised the premises after the surrender.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and Mc-
COLLUM, JJ.

No. 311 January Term 1889, Sup. Ct.; court below, No. 534 March Term 1888, C. P. No. 4.

On March 14, 1888, Henry Hessel issued a writ of replevin against M. T. Johnson, agent of H. M. and Mary Bell Allen,

and R. D. Thompson, bailiff, for the recovery of goods which had been distrained for rent in arrear due by Clinton S. Fritz for premises at the northwest corner of Tenth and Race streets. The writ was served and the property delivered by the sheriff to the plaintiff.

To the plaintiff's declaration defendant Johnson filed an avowry and cognizance, setting out that the distress was lawfully made for rent in arrear by Fritz under a lease made by the defendant to Fritz. To this avowry and cognizance the plaintiff filed several pleas, demurrers to which were sustained as to all except one, which was as follows:

" That no part of the said goods in said declaration mentioned were in and upon the messuage or tenement situate on the northwest corner of Tenth and Race streets, in the city of Philadelphia, which were held and enjoyed by Clinton S. Fritz, with the appurtenances, as tenant thereof to the said Moses T. Johnson, as in the said avowry and cognizance mentioned, at the time when the goods and chattels were distrained for rent in arrears to Moses T. Johnson, as in the said avowry and cognizance mentioned, and this the said plaintiff is ready to verify." Upon this plea the defendant joined issue.

At the trial on October 30, 1888, the defendant, assuming the burden of proof, called M. T. Johnson, and showed that on October 19, 1887, as agent for Horatio M. and Mary Bell Allen, he had executed a lease of the premises at the northwest corner of Tenth and Race streets to Clinton S. Fritz, for the term of two years from November 1, 1887, at the rent of $700 per annum, payable in equal portions monthly in advance; that when four months rent was due and unpaid, amounting to $233.32, the property replevied was found upon the premises and was distrained for said rent. On cross-examination, the witness testified that Fritz, his tenant, was never in possession of the store and basement of the building; that when he made the lease to Fritz, Mr. Hessel, the plaintiff, was in possession of the store and basement, as a sub-tenant of James P. Rossiter; that he had rented the premises to Rossiter on a lease which had expired on April 1, 1888, and Rossiter had held over under the terms of the lease for another year, but in October, 1887, Rossiter had surrendered his lease and the witness then leased to Fritz; that Rossiter had permission in his lease

to sub-let the first floor, and witness "presumed" he had sub-let to Hessel, but "I do not know anything about Hessel;" and that when witness made the lease to Fritz, he made it on the understanding that he could give him possession of the store and basement "on the first of the year." It was then shown that the value of the goods distrained and replevied was about $300. The defendant then rested.

The plaintiff, so far as the paper books showed, offered no testimony, but it was stated in the paper books that the lease made by Johnson, agent, to Rossiter, was for fifteen months from January 1, 1886, at $700 per annum, with a provision for holding over.

No points for instructions were presented, and the court, ARNOLD, J., charged the jury:

All the questions of fact, usually given to a jury, are agreed upon in this case; i. e., that the goods levied on were of the value at least of $300, and that the rent due was $233.32, on the first day of March; your verdict will therefore be for the defendant, and that the rent in arrear was $233.32, and the value of the goods replevied $300. Exception.[2]

The jury returned a verdict for the defendant, finding the rent in arrear at $233.32; value of the goods, $300. A rule for a new trial having been argued before the court in banc, on December 15, 1888, the following opinion was filed, AR-NOLD, J.:

Moses T. Johnson, agent for Horatio M. and Mary Bell Allen, on January 22, 1886, leased a messuage or tenement, in the city of Philadelphia, to James P. Rossiter for the term of fifteen months from January 1, 1886, at the rent of $700 per annum, or $58.33 per month, in advance. Rossiter held over, and, on October 20, 1887, by writing, surrendered his lease and term as of November 1, 1887. On October 19, 1887, Johnson, agent, leased the same premises to Clinton S. Fritz for two years, from November 1, 1887, at the rent of $700 per annum, payable in equal monthly payments in advance. Hessel, the plaintiff, was sub-tenant of part of the demised premises under Rossiter. On March 9, 1888, Johnson distrained on goods on the leased premises for four months' rent, whereupon Hessel brought this action of replevin, and the question is, whether the distraint can be sustained.

Arguments.

In Brown v. Butler, 4 Phila. 71, it was decided that a surrender by a tenant, during the year, would not justify the landlord in ejecting a sub-tenant lawfully in possession. But the decision does not go to the length we would have to go, in saying that the sub-tenant may not only remain in possession, but also without being liable for rent. True, he may stand upon his right to remain until the end of the term at no greater rent than was demandable under the lease to the tenant under whom he held; but it is no less true that if he retain possession, it must be at the peril of having his goods distrained upon for the payment of rent due for the whole of the premises, although he may occupy but part. That the term has come to an end by surrender, or otherwise, makes no difference: Whiting v. Lake, 91 Pa. 349. The sub-tenant cannot hold possession without subjecting his goods to distraint for at least as much rent as was reserved out of the property when he entered into possession; and as that is the same in the old and the new leases in this case, the plaintiff's goods are liable to distraint, either as the goods of a sub-tenant or a stranger: Whiting v. Lake, supra, and cases cited therein.

The rule for a new trial is discharged.

Thereupon the plaintiff took this writ, specifying that the court erred:

2. In the charge to the jury.[2]

3. In directing the jury to find for the defendant, in their verdict, on all the facts generally, subject to the decision of the court in banc upon the questions of law.

*Mr. William C. Mayne*, for the plaintiff in error:

Rossiter, by the surrender of his lease on November 1, 1887, could not prejudice Hessel as to the enjoyment of his possession until April 1, 1888: Brown v. Butler, 4 Phila. 71; Whiting v. Lake, 91 Pa. 349. To sustain an avowry for rent in arrear, the relation of landlord and tenant must be shown to exist between the parties: Helser v. Pott, 3 Pa. 179. In this case there was no relation of landlord and tenant between Johnson and Hessel.

*Mr. Roland Evans* (with him *Mr. R. L. Ashhurst*), for the defendant in error:

It appears from the record that the only question for trial was, whether the goods were taken on the demised premises; neither the lease nor the rent in arrear being denied in the pleading. The evidence was clear that the plaintiff's goods had been distrained upon on the premises stated in the avowry as the demised premises. There was no pretence of evidence to the contrary, nor was there any dispute as to the amount of rent due, or as to the value of the goods. Therefore, the learned judge rightly instructed the jury to find a verdict for defendant, in accordance with this undisputed testimony. Moreover, there was no evidence that Hessel was a tenant of Rossiter. If he had been, he would now be the tenant of Fritz, who had stepped into Rossiter's shoes, as lessee of the whole building: Tilford v. Fleming, 64 Pa. 300.

OPINION, MR. JUSTICE CLARK:

At the trial of this case the facts do not appear to have been in dispute. The effect of the avowry and cognizance was, as it were, to make the defendant in the suit the plaintiff at the trial, and to impose on him the burden of proof. When the defendant's case rested, the court, assuming, perhaps from the statements of counsel, that the facts were admitted, gave the case to the jury, with peremptory instructions to find in his favor, which the jury did,—finding, also, that the rent in arrear was $233.32, and the value of the goods replevied $300. Whether the plaintiff waived the privilege of producing any testimony in reply, does not appear; but it is reasonable to suppose he did, as there seems to have been no objection taken at the time to the action of the court in this respect. Assuming this to be so, we will consider the case as if the facts exhibited in the defendant's proofs were not disputed, and determine whether or not the court was right in giving the binding instructions complained of.

It is a reasonable rule of the law, and well settled, we think, that a tenant for a certain term, or for life, who has under-let, has no right to surrender his lease, to the prejudice of the sub-tenant: 1 Shep. Touch., 301; Tayl., L. & T., § 111; Adams v. Goddard, 48 Me. 212; Eten v. Luyster, 60 N. Y. 252; Brown v. Butler, 4 Phila. 71. If, therefore, Rossiter, on the first day of January, 1886, took a lease of the entire premises at the

corner of Race and Tenth streets, for a term of 15 months, at the rate of $700 per year rent, payable as in the contract is provided, and at the expiration of the term elected to hold over according to the conditions of his contract, he became a tenant for that year on the same terms, and would have no right during the year to surrender the term to the prejudice of Hessel, who also held over upon the terms of his contract with Rossiter. Hessel was in lawful possession as a sub-tenant, under his contract, and the surrender of the original lease by Rossiter could not affect him. His right could not be disturbed by any act which it was not in his power to prevent: Doe v. Pyke, 5 Maule & S. 146 ; Piggott v. Stratton, 1 De G. F. & J. 33–46. The effect of a surrender is to terminate the relation of landlord and tenant; and it has been said that it will, in like manner, terminate with it all the parties to that relation. Prior to the statute of 4 Geo. II., c. 28, it had been held in England that, although a tenant who has made an under-lease cannot by a surrender prejudice his tenant's interest, yet he would lose the right to distrain for rent reserved upon the under-lease ; for, since the rent is incident to the reversion, the surrenderor cannot collect it in this form, because he has parted with his reversion to the original lessor ; nor could the surrenderee have this remedy, because the reversion to which it was incident at the time of the surrender merged in the greater reversion, of which he was already possessed: Thier v. Barton, Moore, 94 ; Webb v. Russell, 3 Term R. 401 ; Mellor v. Watkins, L. R. 9 Q. B. 400. By the statute referred to, however, it was provided that if a lease be surrendered, in order to be renewed, and a new lease given, the relation of landlord and tenant between the original lessee and his under-lessee should be preserved; and it placed the chief landlord and his lessee and the under-lessee, in reference to rents, rights, and remedies, exactly in the same situation as if no surrender had been made: See Tayl., L. & T., § 518. Similar provisions have been adopted in New York by statute : 1 Rev. St. N. Y., 744. In 4 Kent Com., 103, it is suggested that, in those states in which this provision has not been adopted, the question may arise how far the under-tenant, whose derivative estate still continues, is by the surrender of his lessor discharged from the rents and covenants annexed to his tenancy.

But the doctrine of merger will not, we think, under our cases, ordinarily be held to apply, against the intention of the parties and against the interest of the original lessor: Moore v. Bank, 8 W. 138; Duncan v. Drury, 9 Pa. 332. Assuming that the intention of the parties was not to create a merger, Rossiter's surrender may be regarded as in the nature of a transfer of the sub-lease to Johnson, who thereupon was entitled to exercise the rights of the mesne lessor against the sub-tenant. The effect of Rossiter's surrender, as upon a transfer or assignment, was therefore to attorn the sub-tenant to the original landlord, to whom he was bound to fulfil the conditions of his contract in the payment of the rent; and, failing to pay the rent, his goods upon the demised premises were liable to distress, according to the terms of the lease from Rossiter. But the acceptance of the surrender of Rossiter's lease dissolved the relations theretofore subsisting, not only between the original lessor and lessee, but between this lessee and the sub-tenant. If Rossiter was no longer Johnson's tenant, Hessel could not be *his* sub-tenant. As the matter thus stood, Johnson, as the agent of the owners of the fee, had resumed the possession and control, subject to the rights of Hessel, who will be held to have attorned to him.

Johnson then leased the entire premises, including the store-room and the cellar, to Fritz for a term of two years from the first day of November, 1887, at the rate of $700 per year,— rent payable as stated in the contract. This lease was also necessarily subject to the rights of Hessel, who was then, and afterwards remained, in the actual possession of a part of the premises; and Fritz must be taken to have accepted the lease, with this incumbrance. Fritz, as between himself and Johnson, under his contract, had the right to insist upon the possession of the entire premises. He was not obliged to accept the possession of a part only; but, if he chose to enter into the possession of a part, he had the right to do so, and either to take, subject to Hessel's tenancy, to the end of Hessel's term, or to hold Johnson, his lessor, for the injury sustained in the detention of the possession. But in no event can Hessel be considered a sub-tenant. His goods were liable to be distrained upon for his own rent, either by Johnson or Fritz, as assignee of Johnson, as the case might be, but in no event were they

liable to be seized for the rent owing by Fritz; for Fritz was not yet in possession of that portion of the premises under his lease, and Hessel did not hold, either mediately or immediately, under the lease upon which such a distress would be made. The relation of landlord and tenant cannot in any proper sense be considered complete until the tenant acquires the possession; and, to sustain an avowry for rent in arrear, that relation must be shown to exist, as to the very premises upon which the seizure is made, if the goods distrained are the goods of a stranger: Helser v. Pott, 3 Pa. 179. The case of Whiting v. Lake, 91 Pa. 349, cited by the court, and greatly relied upon by the defendant in error, is not in point. In that case Henkle & Bros. were lessees of Simpson. Going out of business, they quit the possession, and Whiting & Co. went in under them. Whiting & Co. held over after the termination of Henkle & Bros.' lease, and it was held that under the provision of the act of March 21, 1772, 1 Sm. L. 370, the goods of Whiting & Co. were liable to distress for rent due by Henkle & Bros. before as well as after the termination of the lease, unless such possession was continued under the authority of the owner. The cases bear no analogy. Here there was no holding over after the lease was determined. The lease was surrendered by Rossiter, and the surrender was accepted, with knowledge of Hessel's right to hold to the end of his term.

If we are right in our views of this case, the defendant has not sustained his avowry and cognizance, and it is unnecessary to consider the other questions raised.

                    The judgment is reversed, and a venire facias de novo is awarded.