## HENRY HESSEL v. M. T. JOHNSON.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 4 OF PHILADELPHIA COUNTY.

Argued April 2, 1891—Decided April 27, 1891.
[To be reported.]

(a) A tenant, after sub-letting a part of the demised premises, assigned
his term to a stranger. Three days later, the assignee surrendered the
lease to the landlord, who immediately granted him a new lease for a
longer term. This arrangement was made without notice to, and in
disregard of the known rights of the sub-tenant:

1. Such surrender and new demise did not extinguish the term of the sub-
tenant: he was entitled to hold thereafter, not under or in subordina-
tion to the new lease, but in hostility to it; and his goods could not be
distrained by the landlord for rent due from the assignee on the new
lease: Hessel v. Johnson, 129 Pa. 173.

2. Nor did the landlord thereafter sustain any relation to the sub-tenant
out of which the right to distrain upon the latter's goods, for rent in
arrear on the sub-lease, could arise; if such a right subsisted in the
landlord, after the surrender, it passed out of him by virtue of the new
lease which he granted to the assignee.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM
and MITCHELL, JJ.

No. 184 January Term 1891, Sup. Ct.; court below, No. 534
March Term 1888, C. P. No. 4.

On March 14, 1888, Henry Hessel brought replevin against
M. T. Johnson, agent, and R. D. Thompson, bailiff, for the re-
covery of certain goods distrained for rent in arrear, due from
Clinton S. Fritz. The writ was served and the property de-
livered to the plaintiff by the sheriff.

The defendant, Johnson, filed an avowry and cognizance to
which the plaintiff filed several pleas, upon one of which issue
was joined. After trial, the jury returned a verdict for the
defendant, finding the rent in arrear to be $233.32, and judg-
ment was entered on the verdict. Upon a writ of error to No.
311 January Term 1889, Sup. Ct., the judgment was reversed
and a venire facias de novo awarded: Hessel v. Johnson, 129
Pa. 173.

Statement of Facts.

The record having been returned to the court below, and various additional avowries, pleas, etc., having been filed, the parties finally agreed upon a case stated, in the nature of a special verdict, as follows:

"In the early part of October, 1887, one James P. Rossiter was the tenant of the premises at the northwest corner of Tenth and Race streets, under a demise under seal made to him by the avowant in the above case, Moses T. Johnson, as agent for Horatio M. and Mary Bell Allen, the term under the lease extending to April 1, 1888, and the rent thereby reserved being at the rate of $58.33 per month, payable on the first day of each month, in advance.

"Henry Hessel, the plaintiff, was sub-tenant under Rossiter, of a portion of the premises, viz., the first floor and basement, at a rent of $25 per month. It is admitted, for the purpose of this suit only, that Hessel's term extended to the end of Rossiter's term, at least. On October 16, 1887, Rossiter sold and assigned to Clinton S. Fritz his unexpired term, for valuable consideration then paid by Fritz to Rossiter; Fritz was aware that Hessel was in possession of the said portion of the premises as sub-tenant.

"To this transfer avowant, the landlord, assented. It was then agreed between Fritz, who was the assignee of the Rossiter lease, and Johnson, the avowant, that the Rossiter lease should be given up on November 1, 1887, and a new lease to Fritz substituted therefor from that date; and, accordingly, on October 19, 1887, Fritz procured from the avowant, as agent aforesaid, a new lease of the entire premises for the term of two years, to begin on the first day of November, 1887, reserving precisely the same rental and containing precisely the same provisions as were contained in the Rossiter lease; the rent reserved being payable in monthly portions of $58.33, in advance, on the first day of each month, it being the understanding that the new lease should be substituted for the Rossiter lease, from the date the new lease went into effect.

"Henry Hessel, the plaintiff, was not a party to these transactions. His consent was never asked for nor obtained to the transfer by Rossiter to Fritz, nor to the substitution of the new lease to Fritz, in place of the old one to Rossiter.

"Immediately on his purchase of Rossiter's unexpired term,

Fritz went into occupation of that part of the premises not occupied by Hessel. He called on Hessel and announced himself as Hessel's new landlord. Some time in November, Fritz called on Hessel and demanded the rent due for that month, and on Hessel's refusal to pay, distrained therefor. Hessel remained in possession until April 1, 1888, and paid no rent to any one; nor did Fritz or Rossiter, or any one else, pay any rent to avowant for that period from November 1, 1887, to April 1, 1888.

"In March, 1888, avowant distrained under avowant's lease to said Clinton S. Fritz for four months' rent as then due and unpaid and in arrears from Clinton S. Fritz, for the entire premises at the rate of $58.33 per month, amounting to $233.32; that is to say, for the months of December, 1887, January, February and March, 1888. Under this distraint, a levy was made generally both on the household goods of Fritz in the upper part of the building, and on the goods and stock of the plaintiff on the first floor. The plaintiff replevied his goods by the writ in this case. The avowant did not further pursue his distraint against Fritz. The value of the plaintiff's goods replevied was $300.

"If the court shall be of opinion that the avowant had any right of distraint for rent on the plaintiff's goods, then judgment to be entered for defendant for such amount of rent in arrear as the court shall find that the plaintiff's goods were liable to be taken for; otherwise, judgment to be entered for the plaintiff."

After argument and re-argument, the court, on December 9, 1890, entered judgment on the case stated for the avowant Johnson, in the sum of $100; whereupon the plaintiff took this appeal, assigning for error:

1. The entry of judgment for the avowant upon the case stated.

*Mr. William C. Mayne,* for the appellant:

The facts set forth in the case stated are purely and simply those presented to this court in Hessel v. Johnson, 129 Pa. 173, in which it was held that in no event were the plaintiff's goods liable to be distrained upon for rent in arrear from Fritz. Hence the plaintiff's replevin must prevail; for, as the case stated sets out, the distraint was made under the lease from

Arguments.

the avowant to Fritz, for rent due and in arrear from Fritz, and therefore not according to the terms of the lease from Rossiter to the plaintiff.

*Mr. Rowland Evans* (with him *Mr. R. L. Ashhurst*), for the appellee :

The question for decision is, not whether the avowant was entitled to take the goods for the particular cause or rent for which he distrained, but whether he had any right of distraint upon the plaintiff's goods, for any amount of rent: Forty v. Imber, 6 East. 435 ; Johnson v. Lawson, 2 Bing. 343 ; Page v. Church, 10 Moore 264 ; Grenville v. Church, 12 Mod. 386.

1. Had the plaintiff's holding, as a sub-tenant under Rossiter who held directly from the avowant, continued, there can be no question that the plaintiff's goods could have been distrained on for the rent of the entire premises, due from Rossiter. We contend that the arrangement between Fritz, the assignee of Rossiter's term, and the avowant, by which a new lease was given to Fritz, was not technically a surrender of the Rossiter lease, but that the new lease was virtually an extension of it; technically a re-lease, Fritz being already in possession under the Rossiter lease : 2 Bl. Com., 324.

2. If, however, there was a surrender, and as appellant contends, the case now presented is substantially the same as Hessel v. Johnson, 129 Pa. 173, then we submit that the decision in that case clearly supports the judgment appealed from. It was held that the effect of the surrender was to attorn the sub-tenant to the original landlord, and that, on his failure to fulfil the conditions of the sub-lease as to payment of rent, his goods on the premises were liable to distress. The avowant, then, clearly had a right of distress for the rent due from the plaintiff under the lease from Rossiter to the latter, and having that right, he is entitled to judgment notwithstanding he may have made the distress under a different right, viz., for rent due from Fritz.

3. It is well settled that a man may distrain for one cause and avow for another: Morris on Replevin, 174. So, by several separate avowries, he may show the various rights justifying his distraint: Morris on Replevin, 151 ; Johnson v. Lawson, 2 Bing. 343, in which case there were twelve avowries. The

reason which may have been assigned for taking a distress is immaterial, if any right to take it existed: Phillips v. Whitsed, 105 E. C. L. 804. The law, as laid down in these cases, has been repeatedly recognized and followed in the decisions of this court: Barr v. Hughes, 44 Pa. 516; Phipps v. Boyd, 54 Pa. 342. Nor does it matter that the amount of rent due by the plaintiff was less than the sum actually distrained for: Barr v. Hughes, supra; Karns v. McKinney, 74 Pa. 387; Reed v. Ward, 22 Pa. 144; and as the judgment compels the plaintiff to pay only the rent admittedly due from him according to the terms of his own lease, he certainly has no right to complain.

OPINION, MR. JUSTICE WILLIAMS:

This case presents an interesting question that lies outside the beaten track of landlord and tenant cases. It was before us two years ago, and is reported in 129 Pa. 173. The material facts are not in controversy, and are as follows:

In 1886, Johnson leased the building at the corner of Tenth and Race streets, Philadelphia, to Rossiter, at an annual rent of seven hundred dollars, with leave to sub-let. Rossiter did soon after sub-let the first floor to Hessel, who went into possession with the knowledge of Johnson, at a rental of twenty-five dollars per month. On the 16th of October, 1887, Rossiter sold his lease to Fritz, and assigned his entire interest therein to him. The term had until April 1, 1888, to run. By his purchase Fritz became, and well understood the fact, the landlord of Hessel, entitled to collect the rent falling due from him. Three days later, Fritz surrendered his lease to Johnson, who thereupon gave him a new one for the same premises, at the same rental but for a longer term. This arrangement was made without notice to Hessel, and in disregard of his rights, of which both parties had the fullest notice. For some reason Fritz did not pay his rent, and in March, 1888, while Hessel's term was yet unexpired, Johnson issued a landlord's warrant on his lease to Fritz for four months' arrears. Upon this warrant a quantity of Hessel's goods in his own store were seized as a distress for rent due from Fritz. An action of replevin was brought for the goods, in which Johnson avowed the taking for rent due from Fritz under the lease made in October, 1887. On the trial in the court below, judgment was rendered

in favor of Johnson, the avowant, and the rent due from Fritz found to be $233. We held that Fritz could not surrender the term of Hessel, and Johnson, by accepting the surrender and making a new lease, could not extinguish it, under the circumstances of this case; that Hessel did not hold under or in subordination to the new lease, but in hostility to it; and that the seizure of his goods could not be justified under an avowry for rent due from Fritz on the new lease.

The case went back for another trial, which has now been had. The judgment entered is again in favor of the defendant, but the rent in arrear is fixed at $100, being the amount of four months' rent due from Hessel to his landlord under the Rossiter lease. This was probably intended as a compliance with the rule laid down in Hessel v. Johnson, supra, and as holding Hessel simply for his own rent. It may be that Hessel owes and ought to pay this sum to his landlord, but our question is whether Johnson has the right to seize his goods because he does not pay it. What right has he?

Hessel went into possession under Rossiter. Johnson was the landlord, Rossiter the tenant, Hessel the sub-tenant, and liable to be distrained upon either by his lessor for his own rent or by his lessor's landlord for the rent to him on the original lease. When Fritz bought from Rossiter he assumed his obligation to pay Johnson, and acquired his right to collect from Hessel, the sub-tenant. The surrender of the lease may have passed the right of Fritz to collect the rent from Hessel over to Johnson, if the transaction had ended with the surrender. If the rent had not been paid then, it is probable that Johnson could have distrained, not for rent due from Rossiter or Fritz, for as to them the lease was at an end, but for the rent due from Hessel, whose sub-tenancy survived. Neither the avowry on which the first trial proceeded, nor the case stated which was substituted for the pleadings at the second trial, suggest that the seizure complained of was made by Johnson as the landlord of Rossiter or of Hessel. On the contrary, the only demise alleged in either is that of November 1, 1887, to Fritz. Our Brother CLARK, in Hessel v. Johnson, supra, pointed out very clearly that as Hessel was not in under the demise so set up, but in hostility to it, the seizure of his goods could not be justified under it.

Opinion of the Court.

But the transaction between Fritz and Johnson did not end with the surrender of the Rossiter lease, but immediately upon the surrender Johnson made a new lease for the entire building, at an entire rent, to Fritz, who accepted it. Both parties knew, as we have seen, of Hessel's lease and occupancy of the first floor. It is clear, therefore, that Fritz took the risk of his possession and the collection of the rent from him, and engaged without any reservation or exception on that account to pay Johnson the rent due for the whole building. If, then, the surrender vested in Johnson the right residing in Fritz as the landlord of Hessel to collect the rent from him, the new lease, executed at the same time, operated as a conduit to return the right so acquired to Fritz, who, as between himself and Johnson, acquired an absolute and unqualified leasehold estate in the premises. If, therefore, the right to amend the avowry, or to treat it as amended, notwithstanding the case stated, be conceded as broadly as it is claimed on Johnson's behalf, the question remains, what right of distraint on the goods of Hessel has Johnson shown himself to have of which we can give him the benefit? He could not distrain for rent due from Rossiter, for that lease, with its undertaking to pay rent, has been surrendered to him. He has accepted the surrender, and has made a new demise of the premises to Fritz. He could not distrain in the right of Rossiter for the rent due from the sub-tenant, for, as we have seen, he does not hold that right since the execution and delivery of the new lease to Fritz.

The mere fact that Hessel owes rent to somebody is not enough to justify the seizure of his goods by anybody except the person who occupies towards him the relation of landlord. This is apparent if we consider on what the right to distrain rests. From the earliest days of the common law it has been regarded as a remedy for the non-payment of rent, to be made use of by the landlord or his bailiff because of a demise at a rent certain of the premises entered for the purpose of making the seizure. If a re-statement of this elementary principle were desirable, it was made in Chicago O. & M. Co. v. Barnes, 62 Pa. 445. The avowry of the seizure must therefore, on all the authorities, English or American, set out a demise; the rent reserved; that rent was in arrears under the demise; and that the seizure was made to compel payment of such arrears. It was formerly

Opinion of the Court.

held that the amount of the arrears must be stated with certainty, and proved as stated: Waltman v. Allison, 10 Pa. 464. This rule has been relaxed, and it is now enough to state the demise and the rent reserved with certainty, and a variance between the avowry and the proofs as to the rent in arrears is immaterial: Barr v. Hughes, 44 Pa. 516; Phipps v. Boyd, 54 Pa. 342. If the plaintiff in replevin desires to deny the right of seizure set up, he may deny the demise under which it is asserted, or, admitting the demise, he may allege that the title had passed out of the avowant before the seizure was made. In either case, the force of the reply rests in the denial of the existence of the relation of landlord and tenant when the goods were seized. On the facts of this case, that relation did not exist between Johnson and Hessel in March, 1888, and no amendment of the avowry could therefore avail as a justification for the seizure of Hessel's goods in his own store.

It was distinctly held when this case was here before that Johnson, having made the new lease with knowledge of Hessel's position as a sub-tenant, could not seize his goods in his own possession, for the rent due from Fritz under the new lease. That was the only question then presented. We now hold that he sustained no relation to Hessel out of which the right to distrain could arise. His right to distrain against Rossiter was extinguished by his own act in accepting and acting upon the surrender of the lease to him. His right to distrain upon Hessel, in the right of Rossiter, if that right subsisted in him after the surrender by Fritz, passed out of him by virtue of the new lease, which clothed Fritz with all the rights and remedies which his landlord had at the time the new lease was made, for the recovery of both the rent and the possession from Hessel. If any other right to distrain than those we have now considered could have been alleged by Johnson, it has not been suggested to us by counsel, nor by an examination of the facts presented. Hessel ought to pay his rent, if he has not; but, whether he does so or not, he has a right to object to the seizure of his goods by any person not authorized to make such seizure. If his position is a somewhat anomalous one, there is this to be said in his favor: he did not put himself in it. The acts of Johnson and Fritz, done in disregard of his rights, and appar-

ently in hostility to him, are responsible for whatever uncertainty has arisen in consequence of them.

> The judgment is now reversed; and judgment is entered in this court upon the case stated, in favor of the plaintiff.

Mr. Justice MITCHELL noted his dissent.

Subsequently, counsel for the appellee filed a motion for a re-argument, accompanied by a brief contending as follows:

1. The transaction between Johnson and Fritz, after the latter had become assignee of the Rossiter lease, whereby a new lease was to be substituted therefor from a future date, November 1, 1887, at most was but an agreement for surrender, and not a surrender per se. It required to be followed by a surrender of possession, to make it effectual. In Huddlestone v. Johnston, 1 McC. & Y. 143, it was expressly decided that an agreement for surrender, not followed by delivery of possession, does not amount to a surrender. To constitute a surrender, there must be both an agreement by the proper parties to manifest such an intent, and also a yielding up of the possession to him who hath the greater estate.

2. The surrender could not be made to the prejudice of the rights of Hessel as sub-tenant, and he had the option of either affirming or disaffirming it. By holding on to the possession he clearly disaffirmed the surrender and prevented it from becoming effectual; and having thus elected to retain his possession under the Rossiter lease, he is clearly estopped to say the same had been surrendered. Thus, the agreement for surrender, if such it was, came to naught, because the surrenderer or his sub-tenant failed to surrender possession of the premises at the time agreed on. It surely cannot be held that a landlord loses his rights under a lease by reason of an agreement on the part of his tenant to surrender, which agreement the tenant, or one claiming under him, fails to perform by insisting on retaining possession.

3. If, quoad Hessel, the Rossiter lease still existed, Hessel's goods were certainly liable to be distrained thereunder. This, moreover, is res judicata, by the decision of this court in the appeal taken by Hessel from a judgment in ejectment entered

in Court of Common Pleas No. 3, on confession and warrant contained in the Rossiter lease, under which judgment Hessel was ousted after the termination of said lease by its terms. Hessel took an appeal, but this court affirmed the judgment of the court below, thus expressly recognizing the lease as subsisting subsequent to the period for which this distraint was made: Hessel v. Johnson, 124 Pa. 233. On the other hand, if Hessel did assent to the surrender he thereby became attorned to Johnson, the paramount landlord, and his goods became liable to distraint by the latter directly for his own rent, as was said in the former opinion by Mr. Justice CLARK.

4. When the new lease was made to Fritz, either Hessel came under it or he did not. If he did, his goods of course became liable to be taken for Fritz's rent. If he did not, and if it can be held that it was possible for him to retain his tenancy under his own lease in hostility to the lease to Fritz, then clearly his goods remained liable to be distrained on by Johnson for his own proper rent. In short, Hessel being in occupation as tenant, he was certainly liable to pay rent to either Johnson or Fritz. This is admitted. If liable to the former, his goods could be taken by Johnson. If liable to the latter, his goods could be taken by Johnson as Fritz's landlord, for the rent of the entire premises under either the Rossiter lease, of which Fritz was assignee, or under the new lease, the rent being the same under each. In either case, the avowant was entitled to judgment.

On May 18, 1891, the motion for a re-argument was refused.