## Holland Furnace Co. v. Ealer et al.

*S. Maxwell Flitter*, for plaintiff; *Fox & Fox*, for defendants.

STEWART, P. J. July 18, 1933.—These were rules for judgment n. o. v. and for a new trial. It would be impossible to enter a judgment for the plaintiff for obvious reasons, and no time need be spent in discussing them. Upon the trial, the judge, thinking that there was no question of fact to be decided by the jury and that only a question of law was involved, directed the jury to find a verdict in favor of the defendants for $283.91, which it was admitted was due to the defendants for rent of a large lot of land upon which was erected an apartment house and the garage leased to Holland Furnace Company. Samuel S. Ealer and Anna N. Ealer owned the premises. On August 5, 1929, they leased the entire premises to John C. Curtis for 14 years at a stipulated monthly rental. This lease was not recorded in the recorder of deeds' office until Feb-

ruary 7, 1931. On November 8, 1930, Curtis, by a written power of attorney, appointed S. S. Ealer his agent with power to collect the rents from the leased premises. About the same time Curtis left Easton and lived in Ohio. Ealer, in the meanwhile, managed the premises, and rented them to various parties. In the early part of February 1931, the exact day not being fixed either by Ingerson, who acted for the plaintiff, or S. S. Ealer, Holland Furnace Company became the tenant of the garage. It would seem that that tenancy was certainly before February 7, 1931, the date when the lease from the Ealers to Curtis was recorded. Mr. Ingerson said the property was leased "in the early part of 1931, February, I believe." In answer to the question, "Were you in Easton, or around Easton, in February of 1931?" Mr. Ealer said, "The beginning, the first day I left I think was on the second of February. I was not here on the sixth."

Exhibit no. 4 is dated February 6, 1931, and Stella Ealer testified that she gave that statement to Holland Furnace Company on February 6, 1931. It is also perfectly plain that these parties intended to have a written lease. Exhibit no. 2 is a blank form of a lease, which the Holland Furnace Company wanted signed. That lease is entirely blank. Exhibit no. 3 is a lease said to have been handed to the plaintiff. It was between S. S. Ealer, agent, as lessor and Holland Furnace Company as lessee. That lease is signed "S. S. Ealer Agt." If either one of these leases had been duly executed, it would have averted the present dispute, but the lease was never executed, and the transaction was a leasing by parol. The dispute was whether S. S. Ealer, as landlord, rented to Holland Furnace Company, or whether he rented as agent for Curtis. The rent of the garage was to be $6 a month, and it was admitted that Holland Furnace Company had paid the full rent for the months that it occupied the garage; the other tenants have defaulted in the payment of their rent to the amount of $238.94. Samuel S. Ealer and Anna N. Ealer, on May 14, 1931, issued a landlord's warrant to Harry P. Brown, constable, and by virtue of that warrant he levied upon a truck and various articles that were contained in Holland Furnace Company's garage and upon certain other articles upon the premises. After that, a bond was given by Holland Furnace Company, and it received the goods distrained on. A statement of claim and affidavit of defense were duly filed, and at the conclusion of the trial the court directed a verdict as aforesaid. Very few questions seem to have perplexed the courts more than questions such as are involved in the present case. The books are full of learned discussions concerning the rights of landlords and tenants, and much of the confusion is due to the fact that our courts in early times followed the English courts, where the relations existing between landlord and tenant grew out of agricultural conditions almost exclusively. The industrial and business relations of the present time are so different from those of old that the legislature has enacted a number of acts changing the old law, such as those referring to leased pianos, melodeons, sewing machines, typewriters, soda water apparatus, and other articles, but we can find no legislative change so far as the present questions are concerned. They depend upon the doctrine referred to by the trial judge, that the goods of subtenants are liable for the unpaid rent of the tenant from whom he leased. After carefully examining the cases, we are of opinion that the vital point in this case is, did Ealer tell Ingerson that he was acting as agent? It was not necessary for him to say that he was acting as agent for Curtis. If he disclosed that he was only an agent, Holland Furnace Company's goods were liable to distraint and to sale if Curtis, the principal, did not pay the rent. If, on the other hand, Ealer assumed to act as the landlord, he, as landlord, is estopped from distraining on Holland Furnace Company's goods. It

makes no difference that the original landlords were S. S. Ealer and Anna N. Ealer. Samuel E. Ealer was the husband, and he acted for his wife in this matter, and she is bound by his act: Stephen's and wife's Appeal, 87 Pa. 202. In other words, Ealer, or Ealer and wife, as landlords, cannot distrain on these goods, and sell them, if Ealer represented to Mr. Ingerson that he was the landlord. In the present case these matters were disputed, and it was error to withdraw them from the consideration of the jury. If this leasing took place on February 7, 1931, after the lease had been recorded, the rule would be different because as a matter of law, the recording of the lease was constructive notice to Holland Furnace Company. This lease was for 14 years and should have been recorded, but the rule is: "Where recording an instrument under the Acts of Assembly is discretionary, and the instrument is recorded, all the incidents and force of a public record attach to the record": Pepper's Appeal, 77 Pa. 373. Under the evidence, the jury are the only ones who can decide these questions of fact. In McCombs' Appeal, 43 Pa. 435, the syllabus is: "The goods of sub-tenants, who had leased from the tenant whom the landlord still held for the rent *(not recognising the sub-tenancy)*, are liable for rent in arrear to the landlord, though the sub-tenant has paid his rent in full to the tenant from whom he leased." At page 439, Mr. Chief Justice Lowrie said: "No doubt under-tenants may sometimes suffer loss by the operation of the rule, if they do not see that the principal rent is duly paid; because the rule and the law of distress make all goods on the premises surety for the rent for the enjoyment of them. An under-tenant can usually save himself by seeing that his own rent is duly paid over to the principal landlord." We have italicized the words in above case, "not recognizing the sub-tenancy", but do not deem it necessary to do so in the following cases; but that is the element that we must keep our minds on in reading them.

In Whiting & Co. v. Lake, 91 Pa. 349, the syllabus is: "W. went into possession of certain premises under H., and held over after the termination of the lease of H. *Held*, that under the provisions of the Act of March 21st, 1772, the goods of W. were liable to distress for rent due by H., before as well as after the termination of the lease, unless such possession was continued under the authority of the owner of the property." Mr. Justice Sterrett said (p. 353) : "If, at the time of the distress, the plaintiffs were in possession under a lease to them from the owner of the property, the relation of landlord and tenant thus existing between them, would forbid their goods should be seized to satisfy rent due by the former tenants: Clifford *v.* Beems, 3 Watts 246; Beltzhoover *v.* Waltman, *supra* [1 W. & S. 416]. But, was there any proof of such relation? The court below thought there was not, and in the end gave binding instructions to the jury to find for the defendant, and ascertain the amount of rent due. If there was any testimony from which the jury might reasonably have found that the plaintiffs had leased the premises from the owner or an authorized agent, it should have been submitted to them."

In Jimison v. Reifsneider, 97 Pa. 136, the syllabus is: "A sub-lessee whose immediate landlord holds under a lease prohibiting sub-letting, and who has not been recognised in his tenancy by the paramount landlord, no matter whether his rent to his immediate landlord be in arrear or not, has no right in case of distraint by the paramount landlord upon the chattels on the demised premises for rent due him, to demand that the goods of his immediate landlord be first distrained upon and sold, and that resort be had to his goods only in case the proceeds of the former sale prove insufficient.

"When in such case the goods of both the sub-lessee and his immediate landlord are distrained upon, and the sub-lessee institutes replevin for his property

and gives the usual bond, and afterwards the paramount landlord, relying upon the security of that bond, stays proceedings against the other goods distrained: *Held*, that by said last-named act the paramount landlord had not precluded himself from proceeding further against the goods which had been replevied." It will be noted that the latter paragraph meets the objection made on argument that nothing was done upon the landlord's warrant as to the other goods. The landlord could sell them or stay proceedings. At pages 141 and 142 Mr. Justice Mercur said: "When his writ of replevin was executed, he gave security which was satisfactory to Powers & Weightman. The goods of the plaintiff in the writ were taken out of their hands. They had a right to rely on that security. They were precluded from then proceeding further against the goods thus replevied, and had an undoubted right to stay proceedings against the other goods restrained. In so doing, after the writ of replevin was executed, they did not in the least render invalid any act of theirs prior to its execution, which was valid when performed."

In Hessel v. Johnson, 129 Pa. 173, the syllabus is: "A tenant for a term certain, who has sub-let the premises, or a portion thereof, cannot by a surrender to his lessor prejudice the rights of the sub-tenant, who will be held to have attorned to the original landlord on the terms of the sub-lease to him.

"If after such sub-letting and surrender, the sub-tenant has remained in possession of the premises sub-let to him, his goods thereon are not liable to distraint for rent due from a new tenant, to whom the landlord has demised the premises after the surrender."

In Hessel v. Johnson, 142 Pa. 8, the syllabus is: "A tenant, after sub-letting a part of the demised premises, assigned his term to a stranger. Three days later, the assignee surrendered the lease to the landlord, who immediately granted him a new lease for a longer term. This arrangement was made without notice to, and in disregard of the known rights of the sub-tenant:

"Such surrender and new demise did not extinguish the term of the subtenant: he was entitled to hold thereafter, not under or in subordination to the new lease, but in hostility to it; and his goods could not be distrained by the landlord for rent due from the assignee on the new lease: Hessel v. Johnson, 129 Pa. 173.

"Nor did the landlord thereafter sustain any relation to the sub-tenant out of which the right to distrain upon the latter's goods, for rent in arrear on the sub-lease, could arise; if such a right subsisted in the landlord, after the surrender, it passed out of him by virtue of the new lease which he granted to the assignee". This case has a very elaborate discussion of the matter upon a retrial, in 129 Pa. 173, supra. In Weidman v. Rieker, 44 Pa. Superior Ct. 85, 89, Mr. Justice Porter said: "The goods of a subtenant, or assignee of the tenant, who has not been recognized as such by the landlord, are, while upon the demised premises, liable to distress for rent due under the terms of the lease: Rosenberger v. Hallowell, 35 Pa. 369; Whiting v. Lake, 91 Pa. 349. The goods of a stranger would share the same fate in like circumstances." See also Rosenberger v. Hallowell et al., 35 Pa. 369, and American Pig Iron Storage Warrant Co. v. Sinnemahoning Iron & Coal Co., 205 Pa. 403. From a consideration of all the above authorities, it will be seen that a jury must pass on what occurred at the inception of this lease. We do not deem it necessary to discuss the other matters referred to in the brief of the learned counsel for the plaintiff.

And now, July 18, 1933, rule for a new trial is made absolute. Eo die, rule for judgment n. o. v. is discharged.

From Henry D. Maxwell, Easton, Pa