**ALLENFIELD ASSOC., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Civ. A. No. 93–3878.**

United States District Court,
E.D. Pennsylvania.

Sept. 27, 1993.

As Amended Dec. 20, 1993.

---

William K. Malkames, Allentown, PA, Richard W. Gladstone, II, Pittsburgh, PA, for Allenfield Associates, A Pennsylvania Ltd. Partnership.

Virginia R. Powel, Philadelphia, PA, for U.S.

Frederic J. Baker, pro se.

### MEMORANDUM

CAHN, Chief Judge.

Allenfield Associates appeals from an order of the Bankruptcy Court dated June 17, 1993. This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a). For the reasons set forth below, which differ from those relied upon by the Bankruptcy Court, the judgment is affirmed.

## I. STANDARD OF REVIEW

■ In bankruptcy cases, this court sits as an appellate court. Questions of law are subject to plenary review. *In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1059 (3d Cir.1993). This court may overturn factual findings only if clearly erroneous. *Id.*

## II. FACTUAL AND PROCEDURAL BACKGROUND

a. Introduction

The facts of this case are taken primarily from the Bankruptcy Court's opinion, as supplemented by the certified record. So far as the opinion below makes factual findings, this court does not disturb those findings.[1]

Appellant Allenfield Associates ("Allenfield") is a Pennsylvania limited partnership. Allenfield was formed for the express purpose of acquiring, managing and leasing an office building on a parcel of land in Allentown, Pennsylvania. For ease of reference, the parcel of land and the improvements thereon are hereinafter referred to as "the property." The property is currently occupied by the United States Department of Veterans Affairs ("VA") under a lease agreement with Allenfield.

The root of the instant dispute lies in the transactions of Wagner Associates ("Wagner"), the company that preceded Allenfield as the landlord of the VA. On February 17, 1977, Boyd Wagner obtained an option to buy the property from Cedar Crest College. Mr. Wagner, a contractor, intended to develop the property and lease it to the VA. In anticipation of acquiring the property, Mr. Wagner and the VA agreed upon a fifteen-year lease from February 11, 1979, through February 10, 1994. The VA also received an option to renew its lease

---

1. To the extent that this court refers to exhibits in the certified record, Government exhibits are cited as G-n and Allenfield's exhibits are cited as P-n.

for an additional five years through 1999. On June 8, 1978, Mr. Wagner assigned his option to purchase the property from Cedar Crest to his wife, Joanna L. Wagner.

### b. The Financing Arrangement

The Wagners sought to secure non-taxable financing for the purchase and development of the property. The Pennsylvania Industrial Development Authority ("PIDA") administers such non-taxable, low-interest financing under a Pennsylvania law enacted to encourage industrial and commercial development. *See* The Pennsylvania Industrial Development Act, 73 Pa.S.A. §§ 301 *et seq.* The availability of such financing, however, is limited to regional industrial development authorities that are organized pursuant to PIDA's enabling act. The Lehigh County Industrial Development Authority ("LCIDA") is such a regional authority.

In order to obtain PIDA financing, the regional industrial development authority must own the property to be financed. Accordingly, Mrs. Wagner entered into a complex transaction with the LCIDA that facilitated the financing and allowed her to lease the property to the VA. Pursuant to an Acquisition Agreement, Mrs. Wagner assigned her purchase option to the LCIDA. The LCIDA then purchased the property from Cedar Crest College. The LCIDA obtained the PIDA financing and leased the property to Mrs. Wagner (the "LCIDA/Wagner" lease) for a 10–year term ending October 31, 1989. For ease of reference, this transaction is referred to as the "acquisition/lease-over". Pursuant to the lease agreement entered into by Mr. Wagner, Mrs. Wagner then leased the property to the VA (the "Wagner/VA" lease) for a 15–year term ending February 11, 1994.

Under the LCIDA/Wagner lease, all monthly payments were assigned to the mortgagee bank. The monthly payments were sufficient to amortize the note's principal and pay its interest. Further, Mrs. Wagner assumed much of the responsibilities that would otherwise fall upon the LCIDA as owner. She unconditionally guaranteed payment to the bank for all obligations and was personally liable for any project costs in excess of the construction loan. In addition to remaining the obligor on the construction loan, Mrs. Wagner retained other indicia of ownership for the property including: (1) liability for all real estate taxes; (2) liability for all fire and liability insurance; (3) responsibility for maintenance and repair work, and; (4) responsibility for compliance with all laws, rules and regulations in association with the property. Lastly, the LCIDA granted Mrs. Wagner an option to purchase the property at any time.

Mrs. Wagner never exercised her option to purchase the property from the LCIDA. Rather, on June 15, 1982, the Wagners entered into an "Agreement of Assignment and Sale" with 21st Century Equity, Inc. G–10. In that agreement, the Wagners assigned to 21st Century Equity their purchase option and all of their interests in both the LCIDA/Wagner lease and the Wagner/VA lease. The LCIDA remained the owner. *Id.* 21st Century Equity then sublet the property to Allenfield on June 24, 1982, and assigned its purchase option to Allenfield. G–11. On that same day, Allenfield expressly assumed and adopted the VA lease. *Id.*

### c. The Proceedings Below

On June 21, 1990, Allenfield filed a voluntary petition in bankruptcy under Chapter 11. On January 15, 1992, Allenfield filed an adversary action against the Government in the Bankruptcy Court. The Government is not a claimant in the bankruptcy action. The complaint in the adversary action seeks a judgment declaring that the lease between Allenfield and the VA expired on October 31, 1989, and that the VA is consequently a holdover tenant. Allenfield concludes that under Pennsylvania holdover tenant principles, the Government is liable for a back rent deficiency of $366,937.50, which represents the difference between the lease rental rate and a fair market rental rate.

The Bankruptcy Court held a hearing on March 11, 1993. Allenfield argued that the

Wagner/VA lease was a sublease subject to the LCIDA/Wagner primary lease, and that therefore both leases terminated on the October 31, 1989, expiration date of the primary lease. The Bankruptcy Court disagreed and granted judgment for the Government, holding that the VA's lease was valid and that Allenfield was bound by its terms, including the 1994 expiration of the lease. Allenfield now appeals from that judgment.

## II. DISCUSSION

In finding the VA lease valid and binding as to Allenfield, the Bankruptcy Court held that Boyd Wagner, and subsequently Joanna Wagner as his assignee, were at all relevant times the "true owners" of the property when they leased it to the VA. Slip Op. at 5–6. By so holding, the Court declined to characterize the Wagner/VA lease as a sublease that would terminate upon expiration of its primary lease.

Allenfield argues that the Wagners were lessees of the LCIDA at all relevant times. Allenfield reasons as follows: the LCIDA acquired title to the property from Cedar Crest College; the LCIDA then leased the property to Wagner; Wagner, in turn, leased the property to the VA; thus, the Wagner/VA lease is a sublease. The import of this argument is that under Pennsylvania law, the Wagner/VA sublease was subject to the terms of the LCIDA/Wagner primary lease. *See* 68 Pa.S.A. § 250.105.[2] Therefore, Allenfield argues, the leases expired simultaneously upon the October 31, 1989, expiration of the LCIDA/Wagner lease. The simultaneous expiration of the leases, Allenfield contends, resulted in the VA becoming a holdover tenant who must

pay a fair market rental rate under Pennsylvania law.[3]

■■■ Allenfield relies on the rule that a sublessee is "subject to the provisions of the lease between the lessor and the lessee." 68 Pa.S.A. § 250.105. It therefore follows that a sublease terminates when the prime lease terminates, even where the express term of the sublease is longer than that of the primary lease. Milton R. Friedman, 1 Friedman on Leases § 7.703, at 385 (3d ed. 1990). The purpose of this rule is to ensure that the prime lessor may enforce his or her right of re-entry or reversion despite the fact that the sublease has not yet expired by its terms. *Id.* at 385–87.

Upon the current state of the record, the chain of leasehold interests appears to be as follows. The LCIDA owns the property. The prime lease is between the LCIDA and 21st Century Equity as the assignee of Joanna Wagner. In 1982, 21st Century Equity sublet the property to Allenfield for a term ending December 31, 2017. Allenfield is the sublessor of the lease to the VA by virtue of Allenfield's express assumption of that lease.

■■■ This court assumes, without deciding, that the LCIDA/Wagner lease is the relevant primary lease. The prime lessors as to Allenfield—the LCIDA and 21st Century Equity, respectively—have not sought to enforce a reversionary interest. Accordingly, the VA's leasehold interest remains undisturbed. The point is that Allenfield, as the sublessor of the VA, does not acquire the right to terminate its lease with the VA prematurely merely because the prime lease expired.[4] Rather, the right to

---

**2.** Section 250.105 provides: "Any person who is a sublessee shall be subject to the provisions of the lease between the lessor and the lessee."

**3.** Allenfield provides no support for its contention that a holding over entitles it to a market rental rate. The rule in Pennsylvania is clearly to the contrary:

> The law is clear that when a tenant i[n] possession under a lease continues as a hold over tenant, the law implies a new lease on the same terms and subject to the same covenants and conditions as those contained in the original lease.

*Reading Terminal Merchants Assn. v. Samuel Rappaport Assoc.*, 310 Pa.Super. 165, 456 A.2d 552, 556 (1983). There is nothing in the Wagner/VA lease to the contrary.

**4.** In another context, the Pennsylvania Supreme Court has refused to allow the sublessor to manipulate the prime lease to the disadvantage of the sublessee:

> It is a reasonable rule of the law, and well settled, we think, that a tenant for a certain term, or for life, who has under-let, has no right to surrender his lease to the prejudice of the subtenant.

terminate the sublease belongs to the prime lessor should it elect to declare a forfeiture or otherwise enforce its rights under the prime lease. *See, e.g., Wehrle v. Landsman,* 23 N.J.Super. 40, 46, 92 A.2d 525, 528 (1952). Under these circumstances, Allenfield cannot manipulate the prime lease and thereby extinguish the VA's otherwise valid interest. Allenfield relies on a rule that does not protect it.

Accordingly, Allenfield's lease with the VA remains enforceable by its terms.[5] Because Allenfield's proffered theory of liability fails as a matter of law, this court does not reach the issues of standing and sovereign immunity that were raised and decided by the Court below. Insofar as the Bankruptcy Court held that the VA lease is enforceable by its terms as to Allenfield, the judgment of the Bankruptcy Court is hereby AFFIRMED.

---

*Hessel v. Johnson,* 129 Pa. 173, 177, 18 A. 754 (1898). Under such circumstances, the "prime tenant has no power to destroy the estate that he created." Friedman, § 7.703 at 387.

**5.** This court notes that Allenfield has not challenged the validity of the lease *qua* lease.