## Beltzhoover *against* Waltman.

The property of a tenant holding by a renewed lease, is not subject to be distrained by the landlord for the payment of the arrears of rent for the previous year, if a third person has acquired an interest in the property.

APPEAL from the decree of the Common Pleas of *Cumberland* county.

Upon a judgment and execution of Michael G. Beltzhoover against J. Waltman, Sen., and J. Waltman, Jr., the personal property of the defendants was levied and sold for $633.33, and upon a rule the money was brought into court for appropriation.

Plies, Thudium & Co. leased their farm to Joseph Waltman, Sen., for the term of two years, ending 1st of April 1840, at a rent of $500 a year. Thomas Craighead became his bail for the payment of the rent. 14th of December 1839, Plies & Co. again leased the farm to both the Waltmans for the period of five years, commencing 1st of April 1840, at a rent of $600 a year. M. G. Beltzhoover became bail for the payment of the rent the first year of this lease. One half of this year's rent was payable 1st of January 1841. The *fieri facias* issued 1st of October 1840, at which time upwards of $600 was due on the first lease. On the 5th of October 1840, the said landlords issued their warrant directed to the sheriff to distrain the property on the demised premises for balance of rent as aforesaid due on first lease, and at same time gave the sheriff notice to retain one year's rent, due 1st of April 1840, out of the proceeds of the sale. This warrant and notice were given at the instance and request of Craighead, the surety. Waltman, Sen., was in possession of the demised premises during the period of the first lease and the second up to the time of sale, and Waltman, Jr., lived with him all the time, and

[Beltzhoover v. Waltman.]

they became joint lessees as before-stated. 16th of December 1840, the landlords gave sheriff notice to retain $300 for a half year's rent on second lease. Beltzhoover made no objection to the payment of the $300 to the landlords on the second lease as claimed by them, but claimed the balance of the fund on his executions. Craighead claimed to have $500 of the fund applied to the rent due on the first lease in which he was surety, and which was one year's rent due 1st of April 1840.

The court decreed the $300 on the second lease to the landlords, and the balance of the fund to Beltzhoover on his executions.

From this decree Thomas Craighead appealed.

*Gallaher* and *Alexander,* for appellants, argued that our statute of 1772 differs materially from the British statute of Anne; that the omission of the words " during the possession of the tenant from whom such arrears are due," must have been designed to extend the remedy beyond the term of the lease. It is manifest that under our Act the goods of the tenant may be distrained after the termination of the lease in the premises, although the tenant may have gone off. In this case, all we wish to apply this principle to, is that the proceeds of the elder Waltman may be applied to the rent.

*Biddle,* for appellee, argued that the goods of two joint tenants cannot be distrained for the rent of a former year due by one of them only. It is a new tenancy, and the landlord cannot distrain. There would be a want of good faith in a landlord, after bringing in a new tenant, to subject his goods to distress for the arrears of rent, or to take even the goods of him who owed it, inasmuch as the stranger to the former lease would be prejudiced by appropriating the goods of his co-tenant when sold, to any other object than the accruing rent.

PER CURIAM.—The decree of the Common Pleas seems to be founded on a just construction of the Act of 1772. It is true the provision of the 8th Anne, from which our Act was taken, that the distress be made " during the possession of the tenant from whom such arrears are due," has been omitted in it; but it is implied by the very nature of the power given to distrain after the determination of the lease, " as if such lease had not been ended or determined," for a distress before the end of a lease must necessarily be during the possession of the lessee. The legislature probably had in view the case of a holding over, such as they provided for in other respects by previous sections; but we do not at present say whether the property of a tenant holding by a renewed lease might not be distrained, provided no one else had gained an interest in it—we leave that point to be decided when it shall arise—but the legislature certainly did not mean to jeopard the

[Beltzhoover v. Waltman.]

interests of third persons subsequently gained in property on the premises by making it subject to distress after the end of the lease as fully as it was before it; for that would involve the property of a stranger who had entered with it under a subsequent lease.   But if the extension of the time was not intended to affect the ownership of property brought on the premises under a new lease, it cannot be suffered to affect the property of the younger Waltman, who became joint lessee with his father on the credit of the father's property on the premises as a security for the payment of his part of the accruing rent.   To deprive the son of that, would leave his own property exclusively liable for the whole instead of being liable jointly; and thus give to the statute an injurious operation which was not intended.   Had the lessor told the son that he meant to pounce upon the father's chattels for the back rent, and thus make the son bear the burthen of the whole, it is easy to suppose the lease would not have been accepted; and we, are not to give the statute a construction that would make it a snare.   The money in court, therefore, was properly distributed.

Decree affirmed.