## Karns *et al. versus* McKinney.

1. As a general rule the goods of a stranger on leased premises are liable to distress for rent.

2. When the tenant in the course of his business necessarily has the goods of those with whom he deals or who employ him, the goods are not liable to distress for rent due by the tenant.

3. Goods of a stranger on the premises were distrained for rent due by a tenant. In replevin by the owner, evidence that the distress was excessive was inadmissible.

4. Brown v. Sims, 17 S. & R. 138; McKinney v. Reader, 6 Watts 41; Riddle v. Welden, 5 Wharton 9, recognised.

| 74 | 387 |
|---|---|
| 134 | 179 |
| 74 | 387 |
| 205 | [1]406 |
| 205 | [2]412 |
| 22 SC | [2]524 |
| e 22 SC | [2]625 |
| 22 SC | [2]626 |
| 22 SC | [2]630 |
| 74 | 387 |
| 26 SC [2] | 8 |

November 10th 1873. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the District Court of *Allegheny county:* No. 57, to October and November Term 1873.

This was an action of replevin, brought to July Term 1868 of the court below, by J. B. McKinney against John Karns and J. F. Noel.

The declaration was that the defendants took of the goods of the plaintiff, one coal barge, a lot of barge timber and divers lots of plank, a lot of oak streamers, two lots of iron, three kegs of spikes, a lot of bolts, four bales of oakum—of the value of $1500.

The defendants pleaded "Rent in arrear, warrant of distraint," &c.

[Karns *v.* McKinney.]

The replication was that the plaintiff did not hold the premises, when the distress was made, as tenant of the defendants or either of them; that no part of the rent for which the distress was made was in arrear from the plaintiff to the defendants or either of them, and that the goods were not liable for distress for rent, if any rent were due.

The case was tried December 12th 1871, before Kirkpatrick, J. On the 21st of May 1867, Karns, one of the defendants, leased to C. W. Porterfield a lot of land in the borough of Tarentum, containing twelve acres, on which was a steam saw-mill, with fixtures; also a dwelling-house, blacksmith-shop, boat-yard, stable, &c., for five years, at an annual rent of $500, payable quarterly, except for the first year, when it was to be paid at the end of the year. The goods were taken on the leased premises.

Porterfield took possession of the premises. The warrant was issued by John Karns, and the articles distrained were on the premises at the time of the distress, May 2d 1868.

Karns gave evidence that the mill was on a lot of two acres, bought by him after he owned the other part of the property. The lumber-yard was on the other side of a creek from the mill.

J. R. Wylie testified for McKinney that he had worked "at this mill of Porterfield's" as head sawyer; he, George Agnew and John Porter had purchased some rafts and barge stuff, which they sawed in the mill; they were running the mill for Porterfield; this lumber was sold to McKinney about three weeks before the distress; it was lying across the creek by itself. "We worked the mill, and when we had a chance to saw a log of our own, we did so, and delivered it over the creek just as any other customer; there was no timber on the other side the creek but our own; it was over the creek when sold to McKinney; it remained where it was."

McKinney testified as to purchasing the timber from Wylie; after the purchase he sent his men, who went on and built the barges; one was built at the time of the distress; he sent iron, oakum, spikes, &c., there for the erection of the barges; the property was on the leased premises, and at the time he purchased, Wylie, Porter and Agnew told him they were running the mill for Porterfield, and that the lumber was their own; they gave him liberty to build the barges there in the barge-yard, alongside of the creek.

McKinney offered in evidence the notice of distress delivered to him by J. F. Noell, the constable, for the purpose of showing that he, Noell, distrained for a greater amount of rent than was due, and for more than he, Noell, the bailiff of Karns, was authorized to distrain for; and also for the purpose of showing that other goods and chattels were distrained upon said premises for the same rent, not replevied and sufficient to satisfy the said rent, or a large

[Karns v. McKihney.]

portion thereof; and also for the purpose of showing that said bailiff was proceeding to collect, by sale of plaintiff's goods (replevied in this case), the sum of $725, being a much larger sum than was due to. or claimed by Karns.

The evidence was objected to by Karns, admitted by the court and a bill of exceptions sealed.

Karns submitted a number of points; the third, which was refused, is as follows:—

"The court is requested to charge the jury that even if they believe all plaintiff's evidence, and find therefrom that plaintiff did, at time of distraint, own the property replevied, yet, under all the evidence, said property is liable to distress of defendant, Karns."

The verdict was for McKinney, plaintiff below, for $78.

Karns took out a writ of error, and, amongst others, assigned for error—

3. The refusal of his third point.

8. The admission of the evidence objected to.

*T. H. B. Patterson* and *T. M. Marshall*, for plaintiff in error. —As. a general rule, goods found on demised premises are liable to distress for rent. There is nothing to take this case out of the rule: Kessler *v.* McConachy, 1 Rawle 440.; O'Donnel *v.* Seybert, 13 S. & R. 57 ; Weidel *v.* Roseberry, Id. 180.

*J. S. Lambie* and *A. M. Brown*, for defendant in error.— Goods of a third person, placed in the way of trade on storage in a warehouse, are not liable to distress for rent for such warehouse : Brown *v.* Sims, 17 S. & R. 138; Briggs *v.* Large, 6 Casey 287 ; Cadwalader *v.* Tindall, 8 Harris 422 ; Riddle *v.* Welden, 5 Whart. 9; Connah *v.* Hale, 23 Wend. 462 ; Matthias *v.* Mesnard, 3 Carr. & Payne 353.

The opinion of the court was delivered, January 5th 1874, by

MERCUR, J.—That the goods of a stranger found on the demised premises are liable to distress for rent, is a well-settled principle of the common law. To this general rule there are many exceptions in fact, but few in principle. The goods of a third person placed in the way of trade on storage, in the warehouse of one who received goods on storage, are not liable to distress for rent for such warehouse, although found on the premises : Brown *et al. v.* Sims *et al.*, 17 S. & R. 138 ; Briggs *et al. v.* Large *et al.*, 6 Casey 287 ; nor are the goods of a guest for rent due by the innkeeper, nor those of a boarder for rent due by the keeper of the boarding-house : Riddle *v.* Welden, 5 Whart. 9; nor grain sent to a mill, nor cloth in a tailor shop, nor goods on a wharf, nor goods of the principal in the hands of a factor for rent due from the one tempo-rarily having the possession of the goods. Nor are goods in the

custody of the law liable: Pierce *v.* Scott, 4 W. & S. 344; nor property of a tenant holding by a renewed lease, for the payment of arrears of rent due from a previous tenant: Clifford *v.* Beems, 3 Watts 246; Beltzhoover *v.* Waltman, 1 W. & S. 416.

The principle covering these cases during the tenancy, except when the goods are in the custody of the law, is this: where the tenant, in the course of his business, is necessarily put in possession of the property of those with whom he deals, or of those who employ him, such property, although on the demised premises, is not liable to distress for rent due thereon from the tenant: Brown et al. *v.* Sims et al., *supra.*

If the property of the defendant was not liable to distress, it was saved therefrom by the protection of this rule only. What are the facts? The demised premises contained about twelve ac. s. There was a steam saw-mill, a brick and frame dwelling-house, blacksmith shop, boat-yard, stable, &c., thereon. The property in question was upon the demised premises when it was distrained. It consisted of one coal-barge and lot of barge timber, and plank sufficient for another barge upon the boat-yard; a quantity of iron, spikes, bolts and oakum in the blacksmith shop; and a lot of oak streamers, pine scantling, boards, plank and timber at the saw-mill. All the lumber had been manufactured at this saw-mill, by Porter, Wylie & Agnew, while they were in the employ of Porterfield, and under an arrangement with him. The evidence wholly fails to show in what manner Porterfield used the boat-yard, whether in building boats himself upon it or permitting others to build; or whether he or they furnished the materials. It also fails to show that the defendant's possession of the boat was with the permission or even knowledge of Porterfield. It appears that Porter, Wylie & Agnew gave the defendant permission to build the barges upon the boat-yard, but their authority so to do is not shown. Whether the defendant was a tenant or a trespasser, he was in actual possession of the yard. He sent his employees there to build the barges. He also procured and sent there the iron, spikes, bolts and oakum necessary to be used in building the barges. The boat-yard was separated from the mill by a creek. The defendant had taken possession of all this lumber lying in that yard. He set about working it up, he mingled it with the other materials which he brought upon the ground. Those materials had never been in the possession of the plaintiff. The defendant had progressed so far with the work as to have completed one barge before the property was distrained. At this time Porterfield had no possession of this property. It was in the exclusive possession of the defendant. He established a business there in which it is not shown that Porterfield was engaged. With what propriety, then, can the defendant invoke the rule which exempts from distress the property of a third person, while it is necessarily in

[Karns v. McKinney.]

the possession of the tenant in the course of his business? He had established upon the boat-yard an independent business; a business in which the tenant Porterfield is not shown to have had any interest, or over which he had any control. The possession and exclusive control had been maintained by the defendant for several weeks prior to the distress. Neither Porterfield nor the persons from whom the defendant purchased the lumber set up any claim to possession. The defendant held the property and the possession by his independent right. The situation of the property, then, did not admit of the application of the rule which the defendant invokes. That portion of the property of which the defendant thus had the possession was liable to distress, and thus qualified, the third assignment is sustained.

We think the learned judge erred in admitting the evidence covered by the eighth assignment. Whether the distress was excessive or whether other property not replevied was "sufficient to satisfy the said rent or a large portion thereof," was irrelevant in the issue being tried. The pleas were "rent in arrear, warrant for distraint, &c." The replication interposed three obstacles to the distress, to wit: First, a denial of tenancy. Secondly, an averment that no rent was in arrear; and thirdly, that the goods in question were not liable to distress.

If any rent was in arrear, it mattered not how much, in this action, the right to distrain existed. If there was none, this evidence could not aid the defendant. If any rent was due the landlord had the right to enter and to distrain. The entry and distress then being lawful in fact, the plaintiffs were not liable as trespassers for an excessive distress. The proper remedy in such case is by action on the case founded on the Statute of Marlbridge: McKinney v. Reader, 6 Watts 41. The other assignments of error are not sustained.

Judgment reversed, and a *venire facias de novo* awarded.