## Wright & Co. v. Giatras et al.

*Bankruptcy — Replevin — Bailment — Landlord and tenant—Distraint—Property in custody of law.*

1. Personal property in possession of one against whom an involuntary petition in bankruptcy is filed and receiver appointed is in the custody of the law, and as such is not liable to be distrained by the landlord for rent.

.2. Personal property, not claimed by the bankrupt by right of exemption, which was sold at receiver's sale, is not subject to distraint by the landlord after receiver's sale.

3. The purchaser of personal property at receiver's sale has a reasonable time within which to remove the same, and during this time such property is not subject to distraint by the landlord for rent due when the tenant went into bankruptcy.

4. A purchaser at receiver's sale of property possessed by a bankrupt under articles of bailment succeeds to all the rights and obligations of the original bailee, and if the former, i. e., the purchaser, fails to comply with the terms of the bailment, the bailor may repossess himself of the property by replevin.

Replevin. Motion for judgment *n. o. v.* C. P. Cambria Co., Dec. T., 1922, No. 384.

*J. Earl Ogle, Jr.*, for plaintiff.

*Sharkey, Widmann & Sharkey*, for defendant; *Frank P. Barnhart*, for intervenor.

REED, P. J., Orphans' Court, specially presiding, Oct. 22, 1923.—This is an action of replevin by which the plaintiff seeks to recover certain goods, to wit, one cigar case and two candy cases, which were placed in the possession of G. G. Giatras under an agreement commonly known as a bailment, while the said G. G. Giatras was a tenant of Annie Sharkey, administratrix of the estate of Neal Sharkey, deceased.

On Sept. 30,. 1922, an involuntary petition in bankruptcy was filed against G. G. Giatras, and a receiver appointed by the United States District Court, who took possession of the bankrupt's personal property, and among the goods that were in the possession of said bankrupt at the time the receiver was appointed were these show-cases, which are the subject of this controversy.

On Oct. 7, 1922, the receiver of the bankrupt, Giatras, held a sale of the personal property of the said bankrupt, and sold, among other things, the bankrupt's equity in the three show-cases above mentioned to Roman C. Widmann, Esq.

Immediately following this sale, Annie Sharkey, administratrix, the landlord, caused a landlord's warrant to issue, and a constable, acting as her bailiff, distrained upon the plaintiff's cigar and candy cases, and on Oct. 16, 1922, this writ of replevin was issued at the suit of Robert A. Wright & Co. against the said G. G. Giatras. Before the execution of the writ of replevin, however, on Oct. 18, 1922, the constable held a sale and sold the cigar and candy cases in question to Louis Lambrinos, the intervening defendant. On the following day, Oct. 19, 1922, the sheriff executed the writ and replevied the cigar and candy cases in the hands of Lambrinos.

The case was placed upon the trial list, and on June 6, 1923, it was called for trial. No witnesses were heard, but the facts were stipulated by agreement of counsel and read to the jury. The plaintiff and defendant each presented a request for binding instructions, and the court affirmed the plaintiff's point and directed the jury to render a verdict for the plaintiff. Thereupon, the defendant moved for judgment *n. o. v.* upon the whole record, and it is this motion which is now before the court for decision.

The real question in the case has been stated by counsel for plaintiff as follows: "After a chattel in the possession of a bankrupt tenant, by virtue of a bailment contract made before bankruptcy, has passed into the custody and actual possession of the United States Bankruptcy Court, and after a sale thereof has been made under an order issuing out of said court, does the law of Pennsylvania give to the landlord the right to distrain upon such chattel for rent due him by the bankrupt tenant, and can the purchaser of such chattel at the sale conducted by the constable to whom the landlord's distress warrant was addressed, successfuly defend his claim of title in an action of replevin instituted by the bankrupt's bailor?"

As a general rule, the property of a third person upon demised premises may be taken under a distress warrant for rent, as well as the property of the tenant himself: Kleber et al. *v.* Ward et al., 88 Pa. 93; Karns et al. *v.* McKinney et al., 74 Pa. 387.

There are many exceptions to this general rule, such as the goods of a third person placed in the way of trade on storage in a warehouse, grain sent to a mill, cloth to a tailor, pipe-organs, sewing-machines, soda-water fountains, etc., but the goods in question here do not come within any of the excepted classes. Therefore, if it were not for the fact that the lessee had gone into bankruptcy and the goods which were in his possession [had been] taken into custody by the receiver, there would be no doubt about the goods in question here being liable for the rent, and the distraint by the landlord and the sale by the constable would have been good. However, there is another class of goods which are exempt from distraint by a landlord, and they are the goods in the custody of the law. This was decided very early in the case of Pierce *v.* Scott, 4 W. & S. 344, and it is one of the cases cited in the brief of the defendant.

From the date of the decision in Pierce *v.* Scott, 4 W. & S. 344, down to the present time, so far as we know, all of the authorities are to the effect that goods in the custody of the law are not subject to distraint, and the last Pennsylvania authority that we find on that proposition of law is the case of Wetherill *v.* Gallagher, 217 Pa. 635. In his opinion in this case, Mr. Justice Mestrezat says (page 643): "The premises were then in the hands of a receiver in bankruptcy, who properly conceded the title to be in the plaintiffs, and also their right to remove the property. At that time there were $1000 of rent in arrear, but the landlord had not distrained, and, hence, the tenant could have removed his personal property from the premises and it would not then have been subject to distress unless fraudulently removed. It is, however, different with the property of a stranger, which may be distrained while on the demised premises, but cannot, under any circumstances, be followed and made subject to payment of arrears of rent. Here there was no privity between the landlord of the premises and the plaintiffs, and, after the annulment of the bailment, the boilers were the property of a stranger, who could remove them, unless a distress had previously been levied for the rent. In order to subject personal property to the payment of rent due for the demised premises, the landlord may distrain the property, or where the property of the tenant has been taken in execution or has been assigned for the benefit of creditors, the landlord is, under present legislation, entitled to be paid one year's rent out of the proceeds of sale. Neither of these conditions existed here at the time the plaintiffs declared the termination of the lease and were entitled to the possession of their property. If the paper company had been in possession, it could have been compelled to deliver the property to the
4 D. & C.

plaintiffs. As it was, the property was *in custodia legis*, and the receiver became the trustee of the plaintiffs and held the property for them. It was then beyond the grasp of the landlord of the premises, and he could not follow and subject it by legal process to the payment of his rent."

In the case of In re Printograph Sales Co., 31 Am. Bank. Reps. 539, 210 Fed. Repr. 567, Judge Thompson, of the District Court for the Eastern District of Pennsylvania, said: "The question for determination is not the nature and extent of the landlord's claim to priority under the lease, but whether he is entitled to enforce its terms by distress. Before the distraint was made, the District Court, of primary jurisdiction, had adjudicated the Printograph Sales Company a bankrupt, and when the constable levied for the rent, the property was already *in custodia legis*. Upon appointment and qualification of the trustee, he is, by section 70 *a* (Bankruptcy Act of 1898), vested with the title of the bankrupt as of the date of the adjudication. The property, therefore, having passed into the custody of the law prior to the levy under the landlord's warrant, the landlord can take nothing by virtue of the seizure. The right to distrain for rent in arrears must be exercised prior to adjudication to be of avail."

In the case of In re Duble, 9 Am. Bank. Reps. 121, 117 Fed. Repr. 794, Judge Archbald, concurring entirely with the conclusion of the referee, said: "To be of avail, the right to distrain must be exercised, and it cannot be where the goods have been taken into legal custody." Judge Archbald further indicates that the reason for the priority of a landlord's rent for one year, upon distribution of the bankrupt's assets, is because the proceedings in bankruptcy cut off the right to distrain.

It appearing, therefore, that no distraint can be made upon goods for rent by the landlord while *in custodia legis*, the question then is whether or not these goods distrained upon were in the custody of the law at the time the distraint was made.

There is no doubt but what these goods which were distrained were in the lawful custody or possession of the tenant, Giatras, at the time the involuntary petition in bankruptcy was presented and the receiver appointed, and, although Giatras had possession of the goods by reason of a bailment, yet he had an equity in them providing the terms of the bailment were complied with by the bailee, and the receiver of the bankrupt was entirely within his rights when he took possession of the property for the purpose of disposing of whatever equity the bailee had in the goods at the time he went into bankruptcy, and just as soon as the receiver took charge of the goods, then they were in the custody of the law and out of the reach of the landlord for the purpose of distraint, and the receiver then became the trustee for the bailor, as well as the bankrupt's creditors.

The defendant, however, contends that, after the receiver sold these goods, they then passed out of the custody of the law and again became liable for the rent that was due at the time the tenant was forced into involuntary bankruptcy, and to sustain that petition, counsel for defendant cites the case of First National Bank *v.* Bartlett, 35 Pa. Superior Ct. 593, a case in which the defendant, Bartlett, had gone into bankruptcy, and the plaintiff, the First National Bank, after the proceedings in bankruptcy, entered a judgment exemption note and sold the property which the bankrupt claimed by reason of the exemption laws. This case, however, differs from the instant case, for the reason that the goods which were claimed by the defendant never passed into the hands of the receiver, and, therefore, were not in the custody

of the law, and the defendant, having signed a judgment note wherein he waived the benefit of the exemption laws, the goods then became liable to levy and execution on the part of the plaintiff, but in the present case the receiver took charge of the goods and sold the bankrupt's equity in the same. Nor do the questions decided in the case of United Shoe Machinery Co. v. Dean, 51 Pa. Superior Ct. 88, have any bearing on the principles involved in the case at bar.

It is further contended that when these goods were suffered to remain on the demised premises, they again became liable for the rent that was due at the time the tenant went into bankruptcy, but under the decisions, as we read them, the purchaser would have a reasonable time to remove the goods, even as against a claim for rent that accrued after the bankruptcy proceedings. "When the chattels of a tenant have been sold to an innocent purchaser, they cannot be distrained for rent due by the vendor, though such purchaser be the succeeding tenant and the goods remain on the demised premises. Thus, in Clifford v. Beems, 3 Watts, 246, where an outgoing tenant sold certain chattels to the incoming tenants, our Supreme Court held that such goods were not liable to a distress for rent due by the outgoing tenant, although continued on the premises by the new tenants. In Beltshoover v. Waltman, 1 W. & S. 416, it was decided that property of a tenant holding by a renewed lease cannot be distrained for arrears of rent for the previous term if a stranger has acquired an interest in the property:" Jackson & Gross on Landlord and Tenant, page 762, par. 1418.

In the case of Clifford v. Beems, 3 Watts, 246, referred to above, Justice Huston, in his opinion, says: "If [goods] once fairly and openly removed, or if clandestinely removed and thirty days elapsed, or if fairly sold to an innocent and honest purchaser, they cannot be distrained."

In the case of Beltshoover v. Waltman, 1 W. & S. 416, it was held that the property of a tenant holding by a renewed lease is not subject to be distrained by the landlord for the amount of arrears of rent for the previous year if a third person has acquired an interest in the property.

We believe, therefore, that when the landlord failed to distrain these goods before they passed into the custody of the law, her remedy would be that provided by the act of assembly, which gives her a preferred claim for one year's rent out of the proceeds realized from the sale of the personal property of the bankrupt, and she should not be permitted to allow the goods which were on the premises to pass into the custody of the law and be sold to an innocent purchaser and then pounce upon them for the rent that was due at the time the receiver took over the assets of the bankrupt.

For the reasons above stated, we hold that the distraint made by the landlord after the tenant went into bankruptcy and after the property had been sold to an innocent purchaser, although it remained on the premises, was without authority of law, and, therefore, not good.

As to the rights of the plaintiff, after the goods have once been seized by the receiver and the equities of the bankrupt sold, inasmuch as the title to the goods remained in the plaintiff by reason of the bailment, if the purchaser of the goods, who would then be in the position of the bailee, failed to comply with the terms of the bailment and pay the balance of the rent due and whatever further consideration was required to get title to the goods, then the bailor, plaintiff here, would have a right, under the terms of the bailment, to take the goods, and it appearing in this case that the purchaser of the equity in the cases, which the bailee had, failed to make the payments of rent as

they fell due and failed to comply with the terms of the lease, the plaintiff was entitled to the goods.

Therefore, for the reasons set forth herein, the verdict directed for the-plaintiff in this case should stand.

And now, Oct. 22, 1923, for the reasons above stated, all the reasons in support of the motion for judgment *n. o. v.* are overruled and the motion for judgment *n. o. v.* is denied. From H. W. Storey, Jr., Johnstown, Pa.