## Greif et al. v. Drumbor-Bingell Company et al.

*Landlord and tenant—Distress—Goods used as samples not exempt.*

Where goods in a tenant's store were used as samples for the selection of cloth which was to be made into suits, and it is undisputed that the goods are the property of the plaintiffs in replevin, and the same have been levied on by the landlord for unpaid rent, the real owner is not entitled to retake them. In such a case, there is no necessity to exempt the goods from the general rule that all goods upon the demised premises are liable to be distrained on for rent due.

Motion by defendants for judgment *non obstante veredicto.* C. P. Northampton Co., July T., 1922, No. 8.

*Wilson, Lehman, Hamilton & Castellucci,* for plaintiffs.

*George R. Booth,* for defendants.

STEWART, P. J.—This is a motion by the defendants for judgment *non obstante veredicto.* The Drumbor-Bingell Company leased a storeroom, which the evidence showed was adjacent to the defendants' storeroom, to a tenant who conducted a somewhat peculiar business of making suits and overcoats to measure from samples which were in his shop. These samples were three and a third yards in length. The tenant had no cloth of his own, and made no suits or overcoats on the premises, but he simply took the measurements and transmitted them to Baltimore, where the suits and overcoats were made out of cloth which was never in the tenant's store. The samples were never made into clothes. That the business was not that of an ordinary merchant tailor was undisputed, and the testimony of Mr. Drumbor in no way contradicted the testimony of the tenant as to the way in which the business had been conducted. In addition to this, there were a number of large cards pasted in the room, on which was printed the guarantee of the English-American Tailoring Corporation that every garment was guaranteed to fit, and small tags on the samples, containing the name English-American Tailoring Corporation. It was also undisputed that the Exhibits A and B represented the relationship between the tenant and the English-American Tailoring Corporation. These exhibits were the same, differing only as to amounts and dates. They were as follows:

### " 'Sample-End' Consignment Contract.

"The undersigned doing business at Bethlehem in the State of Pa. under the style of F. C. Decker hereby acknowledges the receipt of 25 ends from English-American Tailoring Corporation, Limited (as per itemized memorandum below), the same being accepted as the sole propery of English-American Tailoring Corporation, Limited, and subject to their call at any time they may see fit and deem it necessary to do so.

"The undersigned further agrees not to dispose of any of the ends; to use them for display purposes only; to keep them in good condition, and when all or any portion are called for by English-American Tailoring Corporation, Limited, to return them promptly and in the same good condition they were received.

"If any of the ends may have become faded or damaged while in use, it is expressly understood and agreed that such are not to be returned, but their equivalent in cash remitted in accordance with the price list.

"It is further agreed that insurance against loss or damage by fire shall be secured by me covering the approximate value of the ends.

"In Witness Whereof, I have affixed My signature this      day of Feb. 27, 1922.                                        (Signed)    F. C. DECKER."

There was no testimony, either from Mr. Decker or Mr. Drumbor, which showed actual knowledge on Drumbor's part that the English-American Tailoring Corporation owned these goods. In fact, Mr. Drumbor swears positively that he first knew of the plaintiff's claim on the day the goods were advertised for sale. The learned counsel for the defendants, on the trial and in the brief submitted herewith, contends that the plaintiffs are not entitled to recover unless the landlord had either actual or constructive knowledge that the goods were not the tenant's, but belonged to the plaintiffs. It is true that in some of the cases the element of knowledge was referred to by the judges who wrote the opinions, and where it affirmatively appears that the landlord knew of the arrangements, he could not distrain on the goods. To that effect is Rebold *v.* Kolb, 66 Pa. Superior Ct. 473, and Giles *v.* Kolb, 71 Pa. Superior Ct. 29; Wanamaker & Brown *v.* Carter, 22 Pa. Superior Ct. 625. In Karns et al. *v.* McKinney, 74 Pa. 387, Mr. Justice Mercur, after enumerating cases where the goods of a stranger are exempt from distress, said: "The principle covering these cases during the tenancy, except when the goods are in the custody of the law, is this: Where the tenant, in the course of his business, is necessarily put in possession of the property of those with whom he deals, or of those who employ him, such property, although on the demised premises, is not liable to distress for rent due thereon from the tenant: Brown et al. *v.* Sims et al., 17 S. & R. 138." That statement of the law has been referred to in many subsequent cases as the "true principle" and as the "correct principle." On the trial, it seemed to us that if Exhibits A and B showed conclusively that the property belonged to the plaintiffs, the peculiar business which the tenant was engaged in made it an exception to the general rule, and we directed a verdict in favor of the plaintiffs. On a re-examination of the matter, we would still be of the same opinion, were it not for the case of Korson *v.* Nixon, 45 Pa. Superior Ct. 343, which seems to us to rule the present case. In that case the facts are stated on page 344 as follows: "From the record it appeared that the plaintiff leased films and generators to the Empire Amusement Company, a tenant of George B. Wilson, at No. 1111 Market Street, Philadelphia. The amusement company being in default for rent, certain films and generators found on the premises were seized by James H. Nixon, a constable, under a landlord's warrant. Subsequently the plaintiff issued a writ of replevin for the property seized under the warrant." President Judge Rice, after using the above quotation from Karns *v.* McKinney, 74 Pa. 387, said: "The true nature of the exception is seen by reference to some of the subjects to which it has been applied." Then follow the usual examples. He then said: "In such and like cases the nature of the business of the tenant requires that he be put in possession of the goods of his employer or customer. But it would be an unwarranted extension of the exception, and of any authoritative statement of the principle upon which it rests, to hold that if the landlord, when leasing the premises, knows the business the tenant intends to carry on therein, he must be presumed to consent that whatever it is necessary for the tenant to have in the conduct of the business he may bring on the premises under a contract of hiring and hold it free from distress." It will be noticed that the effect of that doctrine as applied to the present case is that, even if Mr. Drumbor had known that these goods belonged to the plaintiffs, it would not make them an exception to the general rule. It would be unprofitable to review the cases which have been cited by counsel. In our judgment, the motion of defendants must prevail on the authority of that case. The goods in suit were delivered to the plaintiffs. In the affidavit of claim, plaintiffs declare that the goods were worth $375.42.

Greif et al. *v.* Drumbor-Bingell Company et al.

In the affidavit of defence, defendants allege that the rent due was $450 and costs, and that the other goods in the tenant's store brought less than $100, and that the sum realized was insufficient to pay the landlord's claim for rent. It would seem, if the facts are as stated, therefore, that the defendants would be entitled to a judgment for $375.42, which the plaintiffs say was the value of the goods. If the amount is incorrect, same can be amicably adjusted.

And now, June 2, 1924, motion of the defendants for judgment *non obstante veredicto* is granted, and rule is made absolute, and judgment for the plaintiffs is stricken off, and judgment is directed to be entered on the verdict in favor of the defendants for the sum of $375.42, upon payment of the jury fee, and the evidence taken upon the trial is certified and filed and made part of the record.          From Henry D. Maxwell, Easton, Pa.