## Pambosh Industries, Inc., v. Pittsburgh Western Land Corp.

*Roberts, Dorn & Mohan,* for plaintiff.

*David R. Levin,* for defendant.

OLBUM, J., May 1, 1963.—On September 7, 1962, plaintiff filed a complaint in replevin without bond for a Porolon insulating material manufacturing unit having a declared value of $37,077.36.

Plaintiff avers that it leased the manufacturing unit to the predecessor company of United Foam Products, Inc., to whose rights and obligations United has succeeded, for a period of two years, to be used by that company in the manufacture of insulating material, plaintiff by said agreement retaining title to said unit. A copy of plaintiff's agreement with United, attached to the complaint, indicates that in addition to a stated monthly rental, plaintiff was to receive a royalty based on the volume of production by United. Plaintiff was designated an authorized sales agent for the distribution and sale of United's products and United was given a first right to purchase the unit at the same price as that offered by a prospective bona fide purchaser.

The complaint further avers that while the unit was on the premises of United Foam Products, Inc., in

Bethel Park Borough, Allegheny County, United defaulted in its lease with defendant, lessor of the premises occupied by United, whereupon defendant distrained for rent upon all the goods located on the premises, including the Porolon unit. Plaintiff avers that the unit was necessarily placed in possession of the tenant, United, in the ordinary course of its business, which was the production and sale of insulating material.

Defendant filed preliminary objections in the nature of a demurrer to the complaint on September 17, 1962, raising, inter alia, the following:

1. The complaint fails to state a cause of action because it avers no right of possession of the property in plaintiff.

2. The complant fails to aver any legal basis for the exemption of the unit from a landlord's distress under the Landlord and Tenant Act of April 6, 1951, P. L. 69, 68 PS §250.101, et seq.

3. The complaint avers a default in the terms of the lease for the premises between defendant and United, which under said act subjects this property to a landlord's distress, unless it is exempted by article IV of the act.

In addition to the demurrer, the preliminary objections also contain a factual narrative averring details of the landlord's distress, the notice given and appraisal made in pursuance thereof, a subsequent voluntary petition for bankruptcy, filed by United Foam Products, Inc., the appointment of a receiver in bankruptcy, and a restraining order issued by the United States District Court against defendant enjoining the landlord's sale on distress, from which facts defendant asserts that this replevin action, directed at goods in custodia legis, is invalid. The preliminary objections were endorsed with a notice to plaintiff to plead.

By an amendment to its complaint filed October 19, 1962, plaintiff avers that it is entitled to immediate possession of the unit by virtue of an order of the referee in bankruptcy dated October 2, 1962, in a case entitled "In Re: United Foam Products, Inc., a Bankrupt," which order, emanating from a petition for reclamation filed for this unit, directs the receiver in bankruptcy to surrender the unit to petitioner therein, this plaintiff.

Contemporaneous with the amendment to its complaint, plaintiff filed an answer to defendant's preliminary objections, containing legal counter-arguments to defendant's demurrer, and averring that by reason of the allegations of the original complaint, the property is exempt from landlord's distress under section 404(1) of the Landlord and Tenant Act of 1951, 68 PS §250.404(1). Plaintiff did not answer the averments of fact contained in defendant's preliminary objections.

Also on October 19, 1962, defendant filed an additional preliminary objection on the ground that an action in replevin without bond cannot be maintained by an owner of goods distrained upon for rent.

Such was the state of the pleadings when this case came before the court en banc for argument on defendant's preliminary objections. Following the argument defendant filed amended preliminary objections containing only amended allegations of fact, and no endorsement to plaintiff to plead thereto.

We believe that this matter can and should be decided on the basis of the pleadings as of the date of the argument. This involves a consideration only of defendant's preliminary objections in the nature of a demurrer, which is a permitted preliminary objection under Pa. R. C. P. 1017(b) (4). Judicial notice is restricted in ruling upon a demurrer to the record in the pending action: Goodrich-Amram §1017(b)-11. It should

hardly be necessary to add that a brief of counsel is not a pleading, and that an "exhibit" attached to a brief does not thereby become part of the record of the case. Moreover, the allegations of fact contained in defendant's preliminary objections, and later in the amended preliminary objections, are not properly a part of preliminary objections, which are limited to those matters set forth in Pa. R. C. P. 1017 (b). The proper procedure to take advantage of plaintiff's failure to answer averments of fact, if plaintiff has been properly notified to plead, is a motion for judgment on the pleadings under Pa. R. C. P. 1034. See Goodrich-Amram §1028 (c)-2.

With the record thus flensed of the superfluous factual averments, the legal issue before us is whether the complaint as amended sets forth a valid cause of action in replevin without bond, realizing that a demurrer admits all relevant facts sufficiently pleaded in the complaint, but not conclusions of law: Goodrich-Amram §1017 (b)-11; Todd v. Skelly, 384 Pa. 423.

In replevin by a tenant or an owner of goods which have been distrained upon for rent, plaintiff need only aver his ownership of the goods and their unlawful taking and detaining by defendant to make out a prima facie case: Wolcoff v. Aguero, 100 Pa. Superior Ct. 576; McCrary v. McCully, 75 Pa. Superior Ct. 464. Plaintiff has averred ownership. The problem here arises regarding its right of possession. The issue is whether plaintiff's property was lawfully seized under a distress for rent due and owing. Plaintiff's claim of defendant's unlawful taking and detaining of the property is based entirely on (1) the referee's order of October 2, 1962, and (2) its claim of exemption under the Landlord and Tenant Act, supra.

It is clear to this court that the referee's order of October 2, 1962, as set forth in the amended complaint, which resulted from plaintiff's reclamation petition,

did not and could not have the legal effect it purported to have, namely, to restore the unit to plaintiff free of defendant's lien for rent based on its distress. The referee in bankruptcy has no power to decide controversies under State law involving liens and the right of possession, once the receiver or trustee, on behalf of the bankrupt's estate, has abandoned any claim to the property. Recognizing this basic law and the confusing language of his order of October 2, 1962, the referee, on February 1, 1963, filed an order clarifying his prior order, stating that the prior order "was intended to refer only to the rights of the above named bankrupt, but was not intended to affect in any way the rights of the landlord under a landlord's distraint against the aforesaid unit or the intervening rights of any party other than the bankrupt." The only effect of the referee's order of October 2, 1962, therefore, was to remove this property from the jurisdiction of the United States court and to restore it to its status quo ante the bankruptcy proceeding, subject to whatever claims and liens had attached under State law. This fact eliminates the referee's order as a basis for plaintiff's right of possession.

Plaintiff's only remaining claim of defendant's unlawful taking and detaining, therefore, is based on its claim of exemption of the unit from the landlord's distress. The complaint avers that the unit was on defendant's premises, that United defaulted under its lease with defendant, and that the defendant distrained for rent. "Personal property located upon the premises occupied by a tenant shall, unless exempted by article four of this act, be subject to distress for any rent reserved and due": Act of April 6, 1951, P. L. 69, sec. 302, 68 PS §250.302. This provision is merely a codification of previously established law, which gave the landlord the right to distrain upon goods of a stranger on the demised premises, with certain well-defined

exceptions. See Reinhart v. Gerhardt, 152 Pa. Superior Ct. 229; Manufacturers' Finance Acceptance Corp. v. Jordan Distributors, Inc., 111 Pa. Superior Ct. 448; M. H. Pickering Co. v. Lichtenstein, 64 Pa. Superior Ct. 78.

The provision on which plaintiff relies for its claim of exemption is section 404(1) of the Act of 1951, 68 PS §250.404(1), which exempts from levy and sale on distress for rent personal property:

"Necessarily put in possession of the tenant in the course of his business by those with whom the tenant deals or by those who employ the tenant."

This provision, too, is a codification of preexisting law: Manufacturers' Finance Acceptance Corp. v. Jordan, supra; Souders v. Willig, 97 Pa. Superior Ct. 197; Karns v. McKinney, 74 Pa. 387. Statutes exempting property from distress are to be construed in derogation of the common law and must be complied with strictly: Reinhart v. Gerhardt, supra; Peerless Soda Fountain Serv. Co. v. Walsh and Boyle, 105 Pa. Superior Ct. 71.

This unit, which was used by United for the manufacture of insulating material and became part of the production unit of defendant's tenant, is not exempt from distress under the exemption asserted by plaintiff. It is not property which was "put in possession of the tenant in the ordinary course of its business. . . ." It came into the tenant's possession only as equipment which would enable the tenant to conduct its business in ordinary course. The "ordinary course" of United's business was not the leasing of manufacturing equipment, but the manufacture and sale of insulating material.

This exemption provision is intended to apply to cases in which the tenant holds the property of another for sale, repair or storage. It is grounded on recognition of the fact that in certain business operations the

tenant must necessarily come into possession of the property of its customers, and it would be manifestly unfair to permit the landlord "to pounce upon whatever should be brought within the tenant's grasp" to satisfy the landlord's claim for rent: Brown v. Sims, 17 S. & R. 138, in which the tenant held the goods of others as a warehouseman. In Souders v. Willig, supra, the exemption applied to an automobile placed with the tenant, the operator of an automobile salesroom, by a customer, to be sold for his account. In Brown v. Stackhouse, 155 Pa. 582, the exempt goods had been consigned to the tenant for sale on commission. In Manufacturers' Finance Acceptance Corp. supra, which also held that automobiles of a third person on the tenant's premises for sale by the tenant are exempt from distress for rent, the court stated this exemption to be that "valuable things in the way of trade shall not be liable to distress," quoting 3 Blackstone's Com. 7. Examples of the kinds of goods which are thus exempt are well set forth in Karns v. McKinney, supra (389) :

"The goods of a third person placed in the way of trade on storage, in the warehouse of one who received goods on storage, are not liable to distress for rent for such warehouse, although found on the premises . . . nor are the goods of a guest for rent due by the innkeeper, nor those of a boarder for rent due by the keeper of the boarding house . . . nor grain sent to a mill, nor cloth in a tailor shop, nor goods on a wharf, nor goods of the principal in the hands of a factor for rent due from the one temporarily having the possession. . . ."

It is clear to us that equipment used by a manufacturer for the manufacture and sale of insulating material is not on the premises "in the way of trade." The tenant did not trade in this kind of equipment, but in the products manufactured by that equipment. We are unable to find any case in which a manufacturing

unit such as that here involved was held to be exempt from landlord's distress. See Reeves v. Bowlby, 27 D. & C. 2d 292. If the legislature, in the Act of 1951, had intended manufacturing units and similar equipment to be exempt from landlord's distress under section 404 (1) of the act, it would not have been necessary to include the provision for exemption of various kinds of specific machinery and equipment contained in section 403, 68 PS §250.403. The argument plaintiff makes for the exemption of this unit would be just as applicable to all the machinery and equipment specifically mentioned in section 403. The only logical conclusion to be drawn is that the legislature did not consider that such machinery and equipment on the demised premises are "put in possession of the tenant in the course of his business," or "in the way of trade," within the meaning of section 404 (1).

That this plaintiff considered this unit to be subject to landlord's distress unless *specifically* released by the landlord is made clear by paragraph 11 of the agreement between plaintiff and United, which requires the lessee to obtain from the landlord a "release and waiver in accordance with the Landlord and Tenant Act of 1951."

The complaint is basically defective for another reason. We do not think that the law contemplates the filing of a replevin action without bond to recover the value of property which has been distrained upon for rent in arrears. Our opinion in this regard is supported by the use of the word "replevy" in section 306 of the act, 68 PS §250.306, giving the tenant or owner of the goods the right to "replevy" within five days after notice of the distress, and by a careful reading of the Pennsylvania Rules of Civil Procedure pertaining to the action of replevin. In Pa. R. C. P. 1073, 1076 and 1077, the word "replevy" is used to denote the taking of possession by the sheriff, not merely the filing of a

replevin action. Thus, Pa. R. C. P. 1073(b) (2) provides:

"If the action is commenced without bond, the sheriff shall not *replevy* the property but at any time before the entry of judgment the plaintiff, upon filing the affidavit and bond prescribed by subdivision (a) of this rule, may obtain a writ of replevin with bond, issued in the original action, and have the sheriff *replevy* the property." (Italics supplied.)

Black's Law Dictionary and Bouvier's Law Dictionary both define *replevin* as a form of action which lies to recover possession of personal property, and *replevy* to mean "to redeliver goods which have been distrained to the original possessor," on his giving security to prosecute an action of *replevin.*

Our interpretation of plaintiff's right to "replevy" is consonant with its long established meaning in Pennsylvania replevin law. The Act of March 21, 1772, 1 Sm. L. 370, entitled "An Act for the sale of goods distrained for rent . . ." gave the landlord the right to appraise and sell goods distrained for rent where the tenant or owner of the goods, within five days after the distress, fails to "replevy the same, with sufficient security to be given to the Sheriff according to law." Under that act, in effect until its repeal by the Landlord and Tenant Act of 1951, "replevy" could mean nothing except redelivery of the property to plaintiff upon the posting of a replevin bond. It was not until 1947, when the Pennsylvania Rules of Civil Procedure governing actions of replevin became effective, that a novelty was injected into replevin practice, an action of replevin without bond. In section 306 of the Act of 1951, 68 PS §250.306, enacted *after* the adoption of the rules, the legislature modernized the language of the Act of 1772, supra, but reenacted the identical substance thereof, including the word "replevy." We discern in this reenactment no intention on the part of the

legislature to change the clear meaning of "replevy," as used in the Act of 1772, and even prior thereto. In fact, the Act of 1772 in this provision may be considered as still in effect, by virtue of section 82 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §582, which provides:

"Whenever a law is repealed and its provisions are at the same time re-enacted in the same or substantially the same terms by the repealing law, the earlier law shall be construed as continued in active operation."

We think that the legislature in section 306 used the word "replevy" deliberately in its literal and historical sense, that is, to redeliver the property, which is also the meaning of "replevy" as used in the rules. If the legislature had contemplated, in the Act of 1951, an action of replevin without bond, by a tenant or owner of goods under a landlord's distress, it would have said simply: "The tenant or owner . . . may, within five days next . . . institute an action of replevin for same." The legislature did not say that. It said: "The tenant or owner . . . may, within five days next . . . *replevy* the same." (Italics supplied.) This can mean only an action of replevin *with* bond.

Our opinion in this respect is based not only upon a statutory provision which is almost 200 years old, but also upon an examination of the long established case law in replevin actions and of the Pennsylvania Rules of Civil Procedure. In an action of replevin *with* bond, a landlord may not file a counterbond and retain possession of the property distrained upon, because he does not claim ownership, but only a lien upon it for his rent by virtue of his distress: Pa. R. C. P. 1076 (a) ; McCrary v. McCully, supra; Pickering v. Yates, 51 Pa. Superior Ct. 436. But the very theory of replevin *without* bond, which is strictly a personal action, is that the plaintiff, in effect, claims a sale of the goods to the

defendant: Goodrich-Amram §1071-2, note 5. This theory of course cannot apply to replevin for goods under distress, because defendant in such case claims no ownership.

A trial of this action, if it were held as an action of replevin without bond, would determine that plaintiff is entitled to possession, or that defendant may proceed with the sale of the property to satisfy its lien. But if plaintiff should prevail at trial, and defendant be found to have no valid lien, the judgment in plaintiff's favor would be in the alternative for the goods or for their value, giving plaintiff "an equivalent option in execution. He may leave the goods with the losing party, validating the loser's possession and title, and collect the value of the goods instead . . .": Goodrich-Amram §1086 (b)-1. See note to Rule 1073. A mere reading of this commentary indicates that it is not intended to apply to a case of replevin for goods under distress, because the landlord claims no title which could be "validated." On the other hand, should the landlord defendant prevail at trial, and sustain its lien by way of a conditional verdict (Pa. R. C. P. 1082), it would, at best, be compelled to hold a public sale to satisfy the lien arising from the distress. In either event, no remedy would be available to the landlord to recover from plaintiff any charge for rent or storage of the machinery during the months, or possibly years, it would have been required to provide safe storage of a bulky piece of equipment which plaintiff avers has a value of $37,000, and which defendant cannot deny is *plaintiff's* property.

It is evident to this court that the action of replevin without bond is not intended to apply to the case of goods which have been distrained upon for rent, and that plaintiff's conception of an action of replevin without bond in the context of this case is fallacious. Plaintiff's theory that defendant landlord, which admittedly

is already owed rent for which it has made a distress, can be required to provide free storage for a valuable piece of equipment, to which it claims no title but only a lien, while this replevin action maunders toward trial, at the conclusion of which plaintiff, if successful, could demand from defendant landlord the value of this costly equipment, which the landlord would then be compelled to accept, is absurd. There can be no doubt that neither the Pennsylvania Rules of Civil Procedure nor the Landlord and Tenant Act of 1951 ever contemplated such a situation, which would impose upon a landlord exercising an age-old right an extremely harsh and unreasonable burden.

There is no reason to believe that the rules intend to give plaintiff in a replevin action the right to *compel* a landlord defendant to retain possession of the goods under distress, which is what the rules specifically intend the landlord shall not be permitted to do. This intention is manifest in Rule 1076 (a), which denies a party claiming only a lien the right to retain possession by filing a counterbond.

There is neither right nor reason in plaintiff's contention. It is a basic statutory presumption that the legislature does not intend a result that is absurd, impossible of execution or unreasonable: Statutory Construction Act, sec. 52, 46 PS § 552. The identical presumption applies to the Supreme Court in its promulgation of the rules: Pa. R. C. P. 128.

We hold that if the tenant or owner wishes to contest the landlord's right to distrain upon the property under distress, such tenant or owner, necessarily claiming title against one who claims no title, must do precisely what the act requires him to do, namely, "replevy" the goods, which means to take possession through the sheriff by posting a bond in double the plaintiff's declared value of the property: Pa. R. C. P. 1073 (a) (2).

We would be disposed to permit plaintiff an opportunity to amend its action to one of replevin with bond, to post a bond in the amount of $74,154.72, and have the sheriff replevy the property, were it not for the fact that plaintiff itself has made it perfectly clear by its pleadings that its claim to the right of possession of this unit is based solely upon the exemption claimed under section 404 (1) of the Landlord and Tenant Act, which claim we find untenable. "Replevin cannot be maintained without showing a general or special property in the plaintiff together with the right of immediate possession": Greenberg v. Goldman Stores Corporation, 117 Pa. Superior Ct. 559. No useful purpose would be served by permitting plaintiff to amend its action by posting a replevin bond. That would simply postpone the decision of the naked legal question, which decision we believe is clear and free from doubt, and should be made now. We must therefore sustain defendant's preliminary objections and dismiss the complaint.

### Order of Court

Now, May 1, 1963, it is hereby ordered, adjudged and decreed that defendant's preliminary objections in the nature of a demurrer are sustained, and the complaint is dismissed.