## Miller's Estate.

*Decedents' estates—Claims against—Tolling statute of limitations—Proof of agency—Competency of husband of claimant—Act of May 23, 1887.*

1. Agency cannot be established by the uncorroborated testimony of the alleged agent.

2. An acknowledgment by a creditor to toll the statute of limitations must be made to the debtor or to his duly accredited agent.

3. Such an acknowledgment must be consistent with an undertaking to discharge the debt and the equivalent of an unqualified promise to pay; where the evidence shows that there was simply an expression of regret that he (the creditor) was unable to pay, though acknowledging the obligation, the statute is not tolled.

4. Where, under the Act of May 23, 1887, P. L. 158, the wife is incompetent as a witness against decedent's estate upon the ground of interest, her husband is also incompetent.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1927, No. 148.

THOMPSON, J., Auditing Judge.— . . . At the audit, two claims were presented; one on behalf of Matilda E. Hallowell for $1000 and the other on behalf of Mrs. David H. Ross for $3000, both claiming to recover upon the guarantee by decedent of bonds of the Pennsylvania Shafting Company in the respective amounts, as to which the company had defaulted and the bonds become worthless. Both claims were objected to, and testimony with respect thereto was taken and is hereto attached. The only witness called was David H. Ross, Esq., husband of one of the claimants.

As to the claim of Matilda E. Hallowell:

In support of this claim, Mr. Ross testified that he was the agent of the claimant and that he bought the bond, not from the corporation, but from Mr. Miller, the decedent, who was the owner of a number of like bonds, and produced and identified the following letter which was received in evidence:

[After describing the bond which had been sold to claimant, Miss Hallowell, the letter of the decedent to her made the following guaranty:

". . . I therefore hereby guarantee you against loss on account of your purchase of this bond and agree to repurchase it from you at its par value and accrued interest at any time before December 31st, 1915. . . .

"ALFRED S. MILLER, President."]

This letter, except for the printed heading and the signature of decedent, is in typewriting upon the stationery of the Pennsylvania Shafting Company. One of the objections to the claim is that this shows that decedent's undertaking was not a personal one, but that he acted as an official of the debtor corporation. In reply to this, it was argued that the appearance of the word "President" after decedent's signature was a mere slip on the part of the typewriter operator; but, whether so or not, I do not think that the appearance of the typewritten word "President" shows an intention by the decedent to act in his capacity as officer of the corporation, for the corporation, by the terms of the bond, was already liable. I construe the document as a personal undertaking by the decedent to guarantee the claimant against loss on account of the purchase of the bond and an agreement to repurchase it at par and accrued interest at any time before Dec. 31, 1915. But the decedent did not do so, and, to my mind, the only effect of his failure to repurchase was to make his guarantee unconditional upon the day following Dec. 31, 1915.

It appears from the testimony of Mr. Ross that, as agent of the claimant, he made repeated demands on Mr. Miller to make good his guarantee, the last demand being within two years of his death. The admission of liability by the decedent upon his guarantee was clearly shown and his liability acknowledged. The liability of the decedent upon the guarantee arose Jan. 1, 1916,

and the contention of the accountant is that the response of the decedent to the demands by claimant's agent, as shown by the testimony of Mr. Ross, is not sufficient to bar the running of the statute.

The testimony of Mr. Ross is as follows:

"I told Mr. Miller that I did not think that Pennsylvania Shafting Company bonds were a proper security for two women, and that I would like him to take them back and pay them the money. He said he could not, he had not the money to do it with, and I offered to take his note for the amount of $4000. (Objected to, so far as it related to Mrs. Ross's claim.) My offer was to include both, to take his note, have the note discounted, and as it would come due, have him reduce it as much as possible, and I would renew my endorsement until they were paid off. His reply to that was that he had made a promise to his wife and to the bank at which he was doing business—I think the Third National—that he would give no more notes, but in his mind these bonds would be taken up by a sale of the property of the Pennsylvania Shafting Company, when we would all be paid off. He had a large holding of these bonds.

"Q. Did Mr. Miller admit the indebtedness to you? Objected to. A. Oh, yes; hundreds of times.

"By the Court: Q. When was the last time Mr. Miller admitted liability on this alleged guarantee prior to his death? A. The last time I recall was just before he was taken to the hospital for some kind of an operation; that was within, I should say, a year or so prior to his death; that was the last time.

"Q. What did he say that particular time in reference to the two obligations? A. That he was sorry that he was unable to take care of them. There was never a question of his liability under his guarantee.

"By Mr. Wagoner: Q. He always admitted that? A. Always admitted it, not by written letter, because I was in his office almost every day. . . .

"Q. How often would you suppose, during the last six years previous to Mr. Miller's death, you spoke of this matter? A. I would not attempt to tell the number of times; I was very, very many times with Mr. Miller; in the latter years of his life Mr. Miller was very much depressed, both on account of his physical condition and his financial condition, and we would talk about this, and after he said he had made a promise not to give a note, and see a way for him to raise the money, we would talk about it, and he would regret his inability to pay it.

"Q. But he admitted the indebtedness? A. Yes; always admitted it."

Mr. Ross further testified that the bond had never been paid by the corporation.

In Maniatakis's Estate, 258 Pa. 11 (15), it is said: "A clear, distinct and unequivocal acknowledgment of a debt as an existing obligation, such as is consistent with a promise to pay, is sufficient to toll the statute: Palmer v. Gillespie, 95 Pa. 340; Wells v. Wilson, 140 Pa. 645. . . . A simple declaration of an intention to discharge an obligation is not the equivalent of a promise to pay, but is more in the nature of a desire to do so, from which there is no implication of a promise. 'To be consistent with a promise to pay the debt, the acknowledgment must be such as indicated an intention to pay the debt existing at the time of the acknowledgment. The time of payment need not be immediate, but the intention to pay must be present. Hence, any language inconsistent with this present intention must be inconsistent with a new promise. . . . An acknowledgment is less in force than a promise, and, hence, the necessity of scrutinizing closely the extent of meaning the language of the acknowledgment has:' Senseman et al. v. Hershman & Houser, 82 Pa. 83, 85."

Miller's Estate.

While the testimony is sufficient to sustain a finding that the decedent acknowledged liability, such acknowledgment was accompanied by the statement that he could not take the bonds back and pay the claimant the money, that he had not the money to do it with, that the bonds would be taken up by a sale of the property of the debtor, when all would be paid off, and that he was sorry that he was unable to take care of them.

This is far from what the debtor said in Kensington Bank v. Patton, 14 Pa. 479, that "he would call up at the bank in the course of a few days and make some arrangements respecting the payment of it, that he might pay it, or could pay it, in the course of a year;" and almost on all fours with Lawson v. McCartney, 104 Pa. 356, where the debtor said, "I said I was sorry I could not pay him all I owed him; I admitted I owed it;" except that that debtor also said, "I told him if he would let this go on, I would do the best I could to pay him;" and in both cases it was held that the statute had not been tolled.

In the case in hand, I cannot find any evidence that the decedent promised to pay the indebtedness, whether on demand or at any time, or that he even expressed an intention to pay. To the offer of assistance by the witness in effecting payment by the giving of a note, the decedent said he had promised not to give any more notes, and declined to give the note asked for. The inference to be drawn from this is that the decedent had no intention to pay, rather than otherwise; and I cannot find any evidence that he ever went beyond the naked acknowledgment of the debt further than to say that he was sorry he could not pay it. I am constrained to hold, therefore, that the claim is barred by the statute of limitations.

As to the claim of Mrs. David H. Ross:

Mr. Ross, who is the husband of the claimant, was also called to testify in her behalf, and his competency as a witness was objected to. His testimony, however, was taken, and its admissibility is now to be determined.

By an unbroken line of authorities from Snyder v. Snyder, 6 Binney, 483, to Pringle v. Pringle, 59 Pa. 281, it was said that "Nothing is better settled than that wherever the wife is interested, the husband cannot be a witness; not on the score of his interest, for he may preclude himself from any by a release, or he may have done so by a settlement to her separate use, but entirely on the ground of public policy."

Thus stood the law prior to the enabling acts permitting a party in interest to testify. Those acts, culminating in the Act of 1887, removed the incompetence of parties as witnesses, except that where any party to a thing or contract in action is dead, the surviving or remaining party to such thing or contract shall not be a competent witness to any matter occurring before the death of the decedent.

Bitner v. Boone, 128 Pa. 567, seems to be the first case that arose after the Act of 1887. In that case the wife of the plaintiff below was permitted to testify in a suit against the executor of the decedent. The Supreme Court reversed, and held that, under the clause of the Act of 1887 just referred to, the plaintiff himself was not competent to testify to any matter occurring in the lifetime of Bitner's decedent, and, consequently, the wife was not. Mr. Justice Clark puts the question, "His wife was not a party to the thing or contract in action, and was not rendered incompetent on that ground, but was she a person whose interest is adverse within the meaning of the Act of 1887? Can she be considered a competent witness when, upon the ground of interest, the husband is incompetent?" Then, referring to the exclusion before the act

## Miller's Estate.

of either spouse where the other is incompetent, Mr. Justice Clark goes on to say: "Notwithstanding the remark of Mr. Justice Sharswood in Pringle v. Pringle, 59 Pa. 288, to the contrary, we think this rule of exclusion is founded upon the two-fold consideration of interest and policy. If the husband must be excluded on account of interest, so also must the wife. . . . If the legislature had intended to change the law in this respect, against the theory of both the common and the statute law and the habits of centuries, it is reasonable to suppose that the change would not have rested upon any mere implication, but would have been expressed in plain words."

Bitner v. Boone has been uniformly followed in subsequent cases; Sutherland v. Ross, 140 Pa. 379, where the rule is stated as follows: "The identity of interest between husband and wife is such that, where one of them is incompetent to testify as a witness, the other is incompetent also:" Matlack v. Bank, 180 Pa. 360; Myers v. Litts, 195 Pa. 595; Burke v. Burke, 240 Pa. 79; Winings v. Hearst, 17 Pa. Superior Ct. 314; Berger v. Berger, 44 Pa. Superior Ct. 305; Reap v. Dougher, 261 Pa. 23; Shaeffer v. Brown, 281 Pa. 14; Jacobs v. Krieger, 87 Pa. Superior Ct. 448; Ryan v. Gage, 1 D. & C. 315.

Neither McMcCarty v. Scanlon, 187 Pa. 495, nor Rowley v. McHugh, 66 Pa. 69, cited by counsel for claimant, throw any light upon the question at issue, for in neither case was the question of the competency of the other spouse involved.

It was argued, however, that the husband was the agent of the wife, and called to testify, not in the capacity of husband, but in his capacity as agent. No authority was cited to show that a witness, otherwise disqualified, is competent either to prove his agency or the claim. In Galligan v. Heath, 260 Pa. 457, the husband testified as the agent of his wife, but nothing appears from the report to show that the wife herself was not competent. Outside of the testimony of the husband here, there is nothing to show his agency. Indeed, from the letter of decedent offered in evidence on behalf of Miss Hallowell, the other claimant, it would appear as though Mr. Ross, in the transaction out of which the claim arose, was acting in his own behalf; but the fact that no claim by him in his own right has been presented is not proof that he acted on behalf of his wife.

The testimony of Mr. Ross as to his wife's claim was received subject to objection; and as, under the authorities cited, it cannot be considered, there is no evidence upon which the claim can be allowed. Moreover, what has been said above with regard to the bar of the statute of limitations as to Miss Hallowell's claim applies with equal effect to the claim of Mrs. Ross.

*Clarence B. Wagoner*, for exceptants; *Townsend, Elliott & Munson*, contra.

LAMORELLE, P. J., Oct. 27, 1927.—The claims are barred by the statute of limitation unless it be affirmatively shown by competent testimony that there was such acknowledgment of liability as would toll the statute.

These are the questions raised by the exceptions. There was but one witness called—husband of one of the claimants. It is contended that, as he was the agent of his wife, he is a competent witness.

His agency, however, is dependent on his own testimony, uncorroborated. Such testimony is not sufficient to prove agency: See Stewart v. Climax Co., 90 Pa. 611; Lawall v. Groman, 180 Pa. 532; Flannery v. Insurance Co., 175 Pa. 387; Whiting v. Lake, 91 Pa. 349. An acknowledgment by a creditor to toll the statute must be to the debtor or to his duly accredited agent: See Baglee's Estate, 4 Dist. R. 122; Bahny v. Levy, 236 Pa. 348; in the instant case there is no such evidence.

### Miller's Estate.

Even if there was, so far as the claim of Mrs. Ross is concerned, her husband is incompetent to testify. There is but one case which upholds such view, Levan v. Bickel, 5 Pa. C. C. Reps. 610; it is not in accord with all other authorities. In Howell's Estate, 12 Dist. R. 193, Judge Penrose says: "The only evidence in support of the claim which has been allowed is the testimony of the wife of the claimant; and as his incomptency as a witness, under the common law, on the ground of interest, has not been removed by any statute, as against the estate of a deceased debtor, the incompetency of his wife necessarily follows. This, as the authorities show, is partly on the ground of public policy and partly because of the identity of interest of husband and wife, and is not affected by the fact that the wife's information was obtained before her marriage: See Greenleaf on Evidence, § 336, &c.; Bitner v. Boone, 128 Pa. 567." See, also, Maguire's Estate, 22 Dist. R. 539. Agency, even if proved, does not sever the marital relation.

As to the other claim, that of Miss Hallowell, even were we to admit the existence of agency, the acknowledgment by the debtor was not such as the law recognizes as reviving the right to sue on the original agreement or on the new promise—for there was no unqualified promise to pay anything, simply an expression of regret.

It would be unnecessary to add anything to what has been said by the Auditing Judge if we did not feel that the argument of the exceptants is such that it merits consideration, and having given it this consideration, we see no reason for elaboration as to the findings of fact and the application of law as set forth at some length in the adjudication.

All exceptions are dismissed and the adjudication is confirmed absolutely.

HENDERSON, J., did not sit.